Case No. 23-11319-F

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

IN RE: JOHNSON & JOHNSON AEROSOL SUNSCREEN
MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY
LITIGATION

Plaintiffs, Katherine Brennan, Michelle Mang, Meredith
Serota, Jacob Somers, Lauren Harper, Dina Casaliggi, Kelly
Granda, Kyra Harrell, Carman Grisham, Heather Rudy,
Fredric Salter and Judith Barich,
Plaintiffs-Appellees.

On Appeal from the United States District
Court for the Southern District of Florida
No. 0:21-md-0315-AHS

## APPELLEES/CROSS-APPELLANTS

By <u>R. Jason Richards</u>
**AYLSTOCK, WITKIN, KREIS &**
**OVERHOLTZ, PLLC**
R. Jason Richards (FL Bar # 18207)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail:    jrichards@awkolaw.com

*Attorneys for Plaintiffs-Appellees/Cross*
*Appellants*

Case Nos. 23-11319-F

*In re Johnson & Johnson Aerosol Sunscreen Litig.*

## Certificate of Interested Persons and Corporate Disclosures

Under Cir. R. 28-1(b) and Fed. R. App. P. 26.1, R. Jason Richards declares that he is an individual and, as such, is not a subsidiary or affiliate of a publicly owned corporation and there is no publicly held corporation that owns ten percent or more of any stock issued by him.

Under Cir. R. 28-1(b) and Cir. R. 26.1-2, the following trial judges, attorneys, persons, association of persons, firms, partnerships, and corporations are believed to have an interest in the outcome of this case or appeal:

1. Andren, John M., Hamilton Lincoln Law Institute, Attorney for Interested Party-Appellant/Cross-Appellee

2. Aveeno, Defendant-Appellee

3. Aylstock, Bryan Frederick, Aylstock Witkin Kreis & Overholtz PLLC, Attorney for Plaintiffs-Appellees/Cross-Appellants

4. Aylstock Witkin Kreis & Overholtz PLLC, Attorneys for Plaintiffs-Appellees/Cross-Appellants

5. Baker, Tyler, Plaintiff-Appellee/Cross-Appellant

6. Barich, Judith, Plaintiff-Appellee/Cross-Appellant

7. Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Attorneys for Plaintiffs-Appellees/Cross-Appellants

8. Beasley, Allen Law Firm, Attorneys for Plaintiffs-Appellees/Cross-Appellants

Case Nos. 23-11319-F

*In re Johnson & Johnson Aerosol Sunscreen Litig.*

9.  Berman, Bruce J., Carlton Fields, PA, Attorney for Defendants-Appellees

10. Bodine, Robert Alexander, Plaintiff-Appellee/Cross-Appellant

11. Botterill, Robert, Plaintiff-Appellee/Cross-Appellant

12. Bradley/Grombacher LLP, Attorneys for Plaintiffs-Appellees/Cross-Appellants

13. Brennan, Katherine, Plaintiff-Appellee/Cross-Appellant

14. Briglio, Julianna, Plaintiff-Appellee/Cross-Appellant

15. Buchanan, Michael F., Patterson Belknap Webb & Tyler, LLP, Attorney for Defendants-Appellees

16. Bursor & Fisher, P.A., Attorneys for Plaintiffs-Appellees/Cross-Appellants

17. Byrne, III, David B., Beasley, Allen Law Firm, Attorney for Plaintiffs-Appellees/Cross-Appellants

18. Carlson Lynch, LLP, Attorneys for Plaintiffs-Appellees/Cross-Appellants

19. Carlton Fields, PA, Attorneys for Defendants-Appellees

20. Carella, Bryne, Cecchi, Olstein, Brody & Agnello, P.C., Attorneys for Plaintiffs-Appellees/Cross-Appellants

21. Carroll, Katrina, Carlson Lynch, LLP, Attorney for Plaintiffs-Appellees/Cross-Appellants

22. Casaliggi, Dina, Plaintiff-Appellee/Cross-Appellant

Case Nos. 23-11319-F

*In re Johnson & Johnson Aerosol Sunscreen Litig.*

23.  Cecchi, James E., Carella, Bryne, Cecchi, Olstein, Brody & Agnello, P.C., Attorney for Plaintiffs-Appellees/Cross-Appellants

24.  Channick, Kimberly, Walsh Law PLLC, Attorney for Plaintiffs-Appellees/Cross-Appellants

25.  Chun, Brian H., Lafayette & Kumagai LLP, Attorney for Defendants-Appellees

26.  Cohen, Andrew, Patterson Belknap Webb & Tyler, LLP, Attorney for Defendants-Appellees

27.  Costco Wholesale Corporation ("COST"), Defendant-Appellee

28.  Dominguez, Johanna, Plaintiff-Appellee/Cross-Appellant

29.  Dickerson, Charity, Plaintiff-Appellee/Cross-Appellant

30.  Dickerson, Jerl, Plaintiff-Appellee/Cross-Appellant

31.  Dickerson, Rebecca, Plaintiff-Appellee/Cross-Appellant

32.  Dickerson, Ryan, Plaintiff-Appellee/Cross-Appellant

33.  Dravillas, Alex, Keller Postman LLC, Attorney for Plaintiffs-Appellees/Cross-Appellants

34.  Ellingson, Halle, Plaintiff-Appellee/Cross-Appellant

35.  Emert, Mellissa R., Kantrowitz Goldhamer & Graifman, P.C., Attorney for Plaintiffs-Appellees/Cross-Appellants

36.  Fernandez, Minett, Plaintiff-Appellee/Cross-Appellant

37.  Fisher, Lawrence Timothy, Bursor & Fisher, P.A., Attorney for Plaintiffs-Appellees/Cross-Appellants

Case Nos. 23-11319-F

*In re Johnson & Johnson Aerosol Sunscreen Litig.*

38. Frank, Theodore H., Interested Party-Appellant/Cross-Appellee and Hamilton Lincoln Law Institute, Attorney for Interested Party-Appellant/Cross-Appellee

39. French, Shelli, Plaintiff-Appellee/Cross-Appellant

40. Geloso, Christina, T., Plaintiff-Appellee/Cross-Appellant

41. Glover, Christopher Dean, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Attorney for Plaintiffs-Appellees/Cross-Appellants

42. Goodwin, Christine, Plaintiff-Appellee/Cross-Appellant

43. Graifman, Gary S., Kantrowitz Goldhamer & Graifman, P.C., Attorney for Plaintiffs-Appellees/Cross-Appellants

44. Granda, Kelly, Plaintiff-Appellee/Cross-Appellant

45. Gravante, III, John, Podhurst Orseck, P.A., Attorney for Plaintiffs-Appellees/Cross-Appellants

46. Grombacher, Kiley L., Bradley/Grombacher LLP, Attorney for Plaintiffs-Appellees/Cross-Appellants

47. Grisham, Carman, Plaintiff-Appellee/Cross-Appellant

48. Hall, Kurt, Plaintiff-Appellee/Cross-Appellant

49. Hamilton Lincoln Law Institute, Attorneys for Interested Party-Appellant/Cross-Appellee

50. Harper, Lauren, Plaintiff-Appellee/Cross-Appellant

51. Harrell, Kyra, Plaintiff-Appellee/Cross-Appellant

52. Honik LLC, Attorneys for Plaintiffs-Appellees/Cross-Appellants

53. Humphreys, Heidi, Plaintiff-Appellee/Cross-Appellant

*In re Johnson & Johnson Aerosol Sunscreen Litig.*

54.  Jimenez, Melissa, Plaintiff-Appellee/Cross-Appellant

55.  Johnson, Bennett, Plaintiff-Appellee/Cross-Appellant

56.  Johnson & Johnson ("JNJ"), Defendant-Appellee

57.  Johnson & Johnson Consumer Inc., Defendant-Appellee

58.  Johnson & Johnson Consumer Companies, Inc., Defendant-Appellee

59.  Kantrowitz Goldhamer & Graifman, P.C., Attorneys for Plaintiffs-Appellees/Cross-Appellants

60.  Keller Postman LLC, Attorneys for Plaintiffs-Appellees/Cross-Appellants

61.  Kenvue Inc. ("KVUE"), Defendant-Appellee's Publicly Traded Parent Corporation

62.  Knobler, Jonah, Patterson Belknap Webb & Tyler, LLP, Attorney for Defendants-Appellees

63.  Lafayette, Gary T., Lafayette & Kumagai LLP, Attorney for Defendants-Appellees

64.  Lafayette & Kumagai LLP, Attorneys for Defendants-Appellees

65.  Lavalle, Steven, Plaintiff-Appellee/Cross-Appellant

66.  Lerner, Kellie, Robins Kaplan LLP, Attorney for Plaintiffs-Appellees/Cross-Appellants

67.  Levin, Sedran & Berman LLP, Attorneys for Plaintiffs-Appellees/Cross-Appellants

68.  Lokietz, Marcy, Plaintiff-Appellee/Cross-Appellant

Case Nos. 23-11319-F

*In re Johnson & Johnson Aerosol Sunscreen Litig.*

69.   Lyons, Barbara Louise, Law Office of Barbara Lyons, Attorney for Defendants-Appellees

70.   Law Office of Barbara Lyons, Attorneys for Defendants-Appellees

71.   Magagna, David C., Levin, Sedran & Berman LLP, Attorney for Plaintiffs-Appellees/Cross-Appellants

72.   Mang, Michelle, Plaintiff-Appellee/Cross-Appellant

73.   McLaughlin, Timothy, Plaintiff-Appellee/Cross-Appellant

74.   Meijer, Sharron, Plaintiff-Appellee/Cross-Appellant

75.   Melquist, Kyle, Plaintiff-Appellee/Cross-Appellant

76.   Meyer, Seth A., Keller Postman LLC, Attorney for Plaintiffs-Appellees/Cross-Appellants

77.   Neubauer, Mark A., Carlton Fields, PA, Attorney for Defendants-Appellees

78.   Neutrogena Corporation, Defendant-Appellee

79.   Nokes, Annette, Plaintiff-Appellee/Cross-Appellant

80.   Obergfell, Andrew Joseph, Bursor & Fisher, P.A., Attorney for Plaintiffs-Appellees/Cross-Appellants

81.   Ocampo, Catalina, Plaintiff-Appellee/Cross-Appellant

82.   Ortega, Frank, Plaintiff-Appellee/Cross-Appellant

83.   Paspulati, Saisruthi S., Lafayette & Kumagai LLP, Attorney for Defendants-Appellees

84.   Patterson Belknap Webb & Tyler, LLP, Attorneys for Defendants-Appellees

Case Nos. 23-11319-F

*In re Johnson & Johnson Aerosol Sunscreen Litig.*

85.  Pedron, Roxanne M., Plaintiff-Appellee/Cross-Appellant

86.  Podhurst Orseck, P.A., Attorney for Plaintiff-Appellee/Cross-Appellants

87.  Porter, Sophia, Plaintiff-Appellee/Cross-Appellant

88.  Postman, Warren D., Keller Lenker LLC, Attorney for Plaintiffs-Appellees/Cross-Appellants

89.  Poulin, Eric M., Poulin Willey Anastopoulo LLC, Attorney for Plaintiff-Appellee/Cross-Appellants

90.  Poulin Willey Anastopoulo LLC, Attorney for Plaintiff-Appellee/Cross-Appellants

91.  Prieto, Peter, Podhurst Orseck, P.A., Attorney for Plaintiff-Appellee/Cross-Appellants

92.  Rafal, George B., Plaintiff-Appellee/Cross-Appellant

93.  Richards, Robert Jason, Aylstock Witkin Kreis & Overholtz PLLC, Attorney for Plaintiffs-Appellees/Cross-Appellants

94.  Robins Kaplan LLP, Attorneys for Plaintiffs-Appellees/Cross-Appellants

95.  Rudy, Heather, Plaintiff-Appellee/Cross-Appellant

96.  Rumberger, Timothy Paul, Law Offices of Timothy P. Rumberger, Attorney for Plaintiffs-Appellees/Cross-Appellants

97.  Law Offices of Timothy P. Rumberger, Attorneys for Plaintiffs-Appellees/Cross-Appellants

98.  Salter, Fredric, Plaintiff-Appellee/Cross-Appellant

Case Nos. 23-11319-F

*In re Johnson & Johnson Aerosol Sunscreen Litig.*

99.  Sander, Nicole, Plaintiff-Appellee/Cross-Appellant

100.  Serota, Meredith, Plaintiff-Appellee/Cross-Appellant

101.  Schaffer, Charles E., Levin, Sedran & Berman LLP, Attorney for
Plaintiffs-Appellees/Cross-Appellants

102.  Shub, Jonathan, Shub Law Firm LLC, Attorney for Plaintiffs-
Appellees/Cross-Appellants

103.  Shub Law Firm LLC, Attorneys for Plaintiffs-Appellees/Cross-
Appellants

104.  Singhal, The Honorable Raag, United States District Judge for the
Southern District of Florida

105.  Slafter, Brian, Plaintiff-Appellee/Cross-Appellant

106.  Somers, Jacob, Plaintiff-Appellee/Cross-Appellant

107.  Stolzenbach, Samantha, Plaintiff-Appellee/Cross-Appellant

108.  Stanoch, David J., Honik LLC, Attorney for Plaintiffs-
Appellees/Cross-Appellants

109.  Sultzer, Jason, The Sultzer Law Group, P.C., Attorney for
Plaintiffs-Appellees/Cross-Appellants

110.  The Sultzer Law Group, P.C., Attorneys for Plaintiffs-
Appellees/Cross-Appellants

111.  Swartz, Anna, Plaintiff-Appellee/Cross-Appellant

112.  Taillard, Michael, Plaintiff-Appellee/Cross-Appellant

113.  Trainor, Sharon, Plaintiff-Appellee/Cross-Appellant

114.  Vaidis, Stacey, Plaintiff-Appellee/Cross-Appellant

Case Nos. 23-11319-F

*In re Johnson & Johnson Aerosol Sunscreen Litig.*

115. Walsh, Alexandra M., Walsh Law PLLC, Attorney for Plaintiffs-Appellees/Cross-Appellants

116. Walsh Law PLLC, Attorneys for Plaintiffs-Appellees/Cross-Appellants

117. Weinshall, Matthew, Podhurst Orseck, P.A., Attorney for Plaintiff-Appellee/Cross-Appellant

118. Weiss, Aaron Stenzler, Carlton Fields, PA, Attorney for Defendants-Appellees

119. Wiley, IV, Roy T., Poulin Willey Anastopoulo LLC, Attorney for Plaintiff-Appellee/Cross-Appellant

120. Xavier, Mike, Plaintiff-Appellee/Cross-Appellant

121. Zalesin, Steven A., Patterson Belknap Webb & Tyler, LLP, Attorney for Defendants-Appellees


Dated: September 5, 2023        */s/ R. Jason Richards*
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
R. Jason Richards (FL Bar# 18207) 17
East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com
*Attorneys for Plaintiffs-Appellees/*
*Cross Appellants*

Case Nos. 23-11319-F

In re Johnson & Johnson Aerosol Sunscreen Litigation

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiffs respectively submit that the issues presented by this appeal are straightforward and do not present novel or difficult questions of law. Accordingly, Plaintiffs do not believe that oral argument would assist this Court.

## Table of Contents

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURES.................................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CONTENTS......................................................................... ii

TABLE OF AUTHORITIES .................................................................iv

I.    INTRODUCTION ......................................................................1

II.   STATEMENT OF ISSUES PRESENTED....................................................2

III.  STATEMENT OF THE CASE.........................................................3

      A. The Class Action Complaints..................................................3

      B. Objector Frank's Involvement................................................6

IV.   STANDARD OF REVIEW .............................................................8

V.    SUMMARY OF ARGUMENT .........................................................8

VI.   ARGUMENT .........................................................................9

      I.   Plaintiffs Have Article III Standing to Seek Prospective Injunctive
           Relief……………………………………………………………………….9

      II.  Frank's Remaining Arguments Lack Merit…………….…..................14

      A.  The Settlement Provides Genuinely Valuable Injunctive Relief Because
          it Provides Plaintiffs with Binding and Enforceable Protection against
          Dangerous Benzene Exposure...............................................14

B.  The Negotiated Extension of Defendant's Refund Program in the Settlement Provides a Benefit to the Class...............................................20

C.  The District Court Fulfilled Its Duty to Assess the Settlement Under Rule 23(e)(2)(C)...................................................................................................22

D.  The District Court Duly Considered Frank's Objections.........................23

E.  The District Court's Common Fund Settlement Valuation is Supported by the Record.............................................................................................29

F.  The Vouchers Are Not "Coupons"...........................................................34

G. The Members' "Near Unanimous Approval" of the Settlement Further Supports a Finding of Fairness.................................................................37

III. The District Court Erred in Declining to Authorize Incentive Awards to Named Plaintiffs Residing in Florida…………..………………..........39

VII.  CONCLUSION................................................................................................43

CERTIFICATE OF COMPLIANCE.......................................................................45

# TABLE OF AUTHORITIES

Cases

*Allen v. Bedolla*,
    787 F. 3d 1218 (9th Cir. 2015)..................................................................... 14

*Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co*.,
    12 So. 3d 850 (Fla. 3d DCA 2009) ...................................................... 41

*Barber v. Bryant,*
860 F. 3d 345 (5th Cir. 2017) ................................................................... 7

*Bennett v. Behring Corp*.,
    737 F. 2d 982 (11th Cir. 1984).............................................. 29, 37, 38

*Blue Martini Kendall, LLC v. Miami Dade County Fla*.,
    816 F. 3d 1343 (11th Cir. 2016)................................................................ 12

*Bravo v. U.S.*,
    577 F. 3d 1324 (11th Cir. 2009)................................................................ 40

*Chieftain Royalty Co. v. Enervest Energy Insitutional Fund XIII-A, L.P*.,
    861 F. 3d 1182 (10th Cir. 2017)................................................................ 40

*City of Livonia Employees' Ret. Sys. v. Wyeth*,
    2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013)........................................ 32

*Clapper v. Amnesty Intern. USA*,
    568 U.S. 398 (2013) .............................................................................. 7

*Collins v. Quincy Bioscience LLC*,
    2020 WL 3268340 (S.D. Fla. Mar. 19, 2020)....................................... 13

*David v. Am. Suzuki Motor Corp.*,
    2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ....................................... 36

*Erie R.R Co. v. Tomkins*,
    304 U.S. 64 (1938) ......................................................................... 40, 41

*Fitzhenry-Russell v. The Coca-Cola Co.*,
    2019 WL 11557486 (N.D. Cal. Oct. 3, 2019)....................................... 15

i

*Fruitstone v. Sparten Race, Inc.*,
  2021 WL 2012362 (S.D. Fla. May 20, 2021) ................................................ 36, 37

*Hillis v. Equifax Consumer Servs., Inc.*,
  2007 WL 1953464 (N.D. Ga. June 12, 2007) ....................................................... 15

*Houston v. Marod Supermarkets, Inc.*,
  733 F. 3d 1323 (11th Cir. 2013).......................................................................... 9

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Prac. Litig.*,
  2015 WL 7282543 (D. N.H. Nov. 16, 2015) ....................................................... 16

*In re Dry Max Pampers Litig.*,
  724 F. 3d 713 (6th Cir. 2013).............................................................................. 17

*In re Equifax Inc. Customer Security Breach*,
  999 F. 3d 1247 (11th Cir. 2021)....................................................................... 8, 12

*In re Groupon, Inc. Mktg. & Sales Prac. Litig.*,
  2012 WL 13175871 (S.D. Cal. Sept. 28, 2012) ................................................. 32

*In re Online DVD-Rental Antitrust Litig.*,
  779 F. 3d 914 (9th Cir. 2015)............................................................................. 36

*In re Pacific Enters. Sec. Litig.*,
  47 F. 3d 373 (9th Cir. 1995)............................................................................... 25

*In re TracFone Unlimited Services Plan Litigation*,
  112 F.Supp.3d 993 (N.D. Cal. 2015) .................................................................. 15

*In re Wawa, Inc. v. Data Security Litig.*,
  2022 WL 1173179 n.4......................................................................................... 13

*Johnson v. Ashley Furniture Indus., Inc.*,
  2016 WL 866957 (S.D. Cal. Mar. 7, 2016) ........................................................ 36

*Johnson v. NPAS Sols., LLC*,
  975 F. 3d 1244 (11th Cir. 2020).................................................................... 24, 40

*Koby v. ARS Natl. Serv, Inc.*,
846 F. 3d 1071 (9th Cir. 2017)..............................................................21

*Kumar v. Salov North Am. Corp.*,
2017 WL 2902898,n.4 (N.D. Cal. July 7, 2017)...................................32

*Lane v. Facebook, Inc.*,
696 F. 3d 811 (9th Cir. 2012)...............................................................16

*Lipuma v. American Express Co.*,
406 F.Supp.2d 1298 (S.D. Fla. 2005) ...................................................38

*Mitchell v. Allstate Vehicle and Property Ins. Co.*,
2023 WL 5004064 (S.D. Ala. Aug. 3, 2023).......................................41

*Muransky v. Godiva Chocolatier, Inc.*,
922 F. 3d 1175 (11th Cir. 2019).......................................................7, 39

*Muransky v. Godiva Chocolatier, Inc.*,
979 F. 3d 917 (11th Cir. 2020).........................................................6, 38

*Pinto v. Princess Cruise Lines*,
513 F.Supp.2d 1334 (S.D. Fla. 2007) ..................................................17

*Poertner v. Gillette Co.*,
618 F. App'x. 624 (11th Cir. 2015) .......................................17, 27, 30

*Roth v. GEICO General Ins. Co.*,
2020 WL 10818393 (S.D. Fla. Oct. 8, 2023).......................................40

*South v. Progressive Select Ins. Co.*,
2023 WL 2733548 (S.D. Fla. March 21, 2023) ...................................41

*Venerus v. Avis Budget Car Rental, LLC*,
2023 WL 4673481 (M.D. Fla. May 25, 2023).....................................41

*Weiss v. General Motors, LLC*,
418 F.Supp.3d 1173 (S.D. Fla. 2019) ..................................................13

*Williams v. Reckitt LLC*,
65 F. 4th Cir. 2023 .............................................................6, 9, 10, 13

iii

*Wilson v. EverBank,*
  2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ........................................... 38

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.,*
  247 F. 3d 1262 (11th Cir. 2001).............................................................. 9

*Zapeda v. PayPal, Inc.,*
  2017 WL 1113293 (N.D. Cal. Mar. 24, 2017)............................... 15, 16

Rules

Fed. R. Civ. P. 23(e)(2)(C)(ii).................................................... 26, 27

Fed. R. Civ. P. 23(e)(2)(C)(iii) .................................................. 26, 28

Rule 23(e)............................................................................................... 37

Rule 23(e)(2) ......................................................................................... 22

Rule 23(e)(2)(C)(ii)-(iii) ....................................................................... 26

## I. INTRODUCTION

This appeal challenges a class action Settlement[1] that the District Court meticulously reviewed and then approved in accordance with Rule 23. The Class plaintiffs (hereafter "Plaintiffs") alleged that Johnson & Johnson Consumer Inc.'s (hereafter "Defendant") sunscreen products, sold under the company's Neutrogena and Aveeno brands, were contaminated with elevated levels of benzene (a known human carcinogen). Defendant vigorously contested the allegations. Litigating entailed significant risks, both on the law and the facts. Against that backdrop, Settlement Plaintiffs and Class Counsel negotiated a Settlement that secures Class Members a 100% recovery of actual damages, vouchers that can be used to purchase *any* Neutrogena or Aveeno products (not just sunscreens), and injunctive relief. And they achieved that negotiated outcome within six months of the very first class action filing, conserving immense judicial resources. Ultimately, over 209,000 claims were received and processed, and only two requests for exclusion from the class were received. Dkt.95 at 8.[2]

As noted in the District Court's Order Granting Final Approval of Settlement,

---

[1] Capitalized terms herein are used as defined in the Class Action Settlement Agreement (Dkt.55-9) (hereafter "Settlement" or "Settlement Agreement") unless otherwise defined.

[2] "Dkt." refers to the docket entries in MDL No. 3015, No. 0:21-md-03015 (S.D. Fla.). "Tr." refers to the August 12, 202 fairness hearing transcript.

Certifying the Settlement Class, and Awarding Attorney's Fees (hereafter "Final Order"), "the efficient way in which Class Counsel was able to negotiate a nationwide resolution to this matter" demonstrates the "excellent job Class Counsel have done" which "is also demonstrated in the benefits afforded by the Settlement," and their request for fees and costs "is appropriate." *Id*. at 21, 29. In short, "[t]his Settlement provides immediate, real, substantial, and practical benefits to the Class Members." As recognized by the District Court, there is no "'better settlement'" available. *Id*. at 25.

For professional objector Theodore H. Frank ("Frank"), that amply supported factual finding is not good enough. Frank seeks to overturn the relief obtained on behalf of the Class by casting aspersions and making baseless allegations of unfairness and self-dealing. The District Court acted well within its discretion when it considered and then rejected this wild conjecture. Dkt.95 at 19. Particularly given the standard of review, Frank's arguments should again be rejected here.

## II. STATEMENT OF ISSUES PRESENTED

1.    Did the District Court abuse its discretion in approving a settlement resolving claims involving alleged benzene contamination in Defendant's sunscreen products where the settlement offers 100% recovery of actual damages for affected products, a recovery for non-affected products in the form of vouchers, and injunctive relief?

2

2.    Did the District Court err in declining to authorize the payment of Incentive Awards, in the amount of $250.00 each, to named Florida resident Plaintiffs Serota and Somers? (Cross-Appeal).

### III. STATEMENT OF THE CASE

### A. The Class Action Complaints

The District Court's Final Order thoroughly states the relevant factual and procedural background for this appeal. *See* Dkt.95 at 2-10, 16-18. In short, on May 25, 2021, Plaintiff Serota filed a putative nationwide class action complaint arising out of the presence of benzene in Defendant's sunscreen products. *Id*. at 2. Other putative class action complaints followed. *Id. See e.g. Brennan v. Johnson & Johnson Consumer Inc.*, No. 21-cv-04869 (N.D. Cal.). Ultimately, fourteen additional litigations were filed throughout the country. Dkt.82 at 12.

Plaintiff Serota asserted claims for violations of various states' consumer protection and/or deceptive and unfair trade practices acts, unjust enrichment, negligent misrepresentation/omission, breach of express and implied warranties, strict product liability-failure to warn, and strict product liability-manufacturing defect. Dkt.95 at 3. The relief sought by Serota included an order by the court certifying the case as a class action, an award of compensatory damages, interest, attorneys' fees and costs, as well as injunctive relief. *Id*.

3

On July 14, 2021, Defendant announced it was initiating a voluntary recall of several of its aerosol sunscreen products due to potential benzene contamination. *Id.* On the same day Defendant instituted the recall, it announced it would offer cash refunds for the full manufacturer's suggested retail price for the affected products, or alternatively, the price actually paid by consumers. *Id.* Shortly thereafter, counsel for Plaintiffs in the *Serota* and *Brennan* actions, which were the first-filed actions, began settlement discussions with Defendant.[3] On July 30, 2021, the *Serota* Plaintiffs filed their First Amended Class Action Complaint (hereafter "FAC"). *Id.* at 4.

After initiating settlement discussions, counsel for Serota, Brennan, and Defendant agreed to jointly retain former United States District Judge John C. Lifland as a mediator to assist in reaching a nationwide resolution. *Id.* The mediation resulted in an agreement on a general framework for global settlement. *Id.* The parties continued negotiations after the mediation for several weeks in order to finalize the specific Settlement terms. *Id.* During that process, Serota and Brennan's

---

[3] On July 29, 2021, counsel in another putative class action filed a petition with the Judicial Panel on Multidistrict Litigation ("JPML") under 28 U.S.C. § 1407 to centralize the litigation involving the alleged contamination of Neutrogena and Aveeno-brand sunscreens in the District of New Jersey. *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Prac. & Prods. Liab. Litig.*, 568 F.Supp.3d 1412, 1413 (J.P.M.L. 2021). On October 8, 2021, the JPML transferred this matter to the Southern District of Florida before the Honorable Anuraag Singhal. *Id.* at 1414.

counsel also retained experts and consultants to evaluate the factual positions asserted by Defendant. *Id*. at 5. Ultimately, the parties were able to reach an agreement in principle to settle the litigation on a class-wide basis and filed a notice of the same with the District Court on October 29, 2021. *Id*.

Over the course of negotiations, the parties voluntarily exchanged discovery, which enabled Plaintiffs to assess the merits of the claims and defenses. *Id*. These voluntary exchanges were coupled with Plaintiffs' own independent investigation, which included independent testing of Defendant's sunscreen products, discussions with consultants and experts in the field, and dialogue with Class Members regarding the sufficiency of Defendant's refund program. *Id*. On December 17, 2021, the parties executed the Settlement Agreement and Plaintiffs filed a Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement. *Id*. at 6. Following the appointment of Class Counsel (Dkt.64) on February 17, 2022, the District Court conducted a preliminary fairness hearing. *Id*. at 7. No class members opposed Plaintiffs' motion for preliminary approval. *Id*. The District Court granted Plaintiffs' motion on March 28, 2022, finding that the Class satisfied the requirements for certification under Rule 23, and that the settlement was fair, reasonable, adequate, and not the result of collusion. *Id*. at 8. The District Court ordered the parties to provide Class Members with notice as set forth in the Settlement, and set the Final Approval Hearing for August 12, 2022. *Id.*

5

Following preliminary approval, the Settlement Plaintiffs conducted additional confirmatory discovery, including taking depositions of two "key players" within Defendant's employ with direct involvement in the benzene contamination response. *Id*. Also, during this timeframe, the parties timely provided Class Members with the approved notice. *Id*. at 9. The notice program reached at least 75% of potential Class Members, with a claims rate of approximately 2.88%. *Id*. Ultimately, over 209,000 claims were received and processed, with only two requests for exclusion from the Class. *Id*. Thereafter, Plaintiffs filed their fee application (Dkt.78-1) and Motion and Memorandum in Support of Final Approval of Class-Action Settlement (Dkt.82) ("Motion for Final Approval"). *Id*. at 10.

### B. Objector Frank's Involvement

On July 7, 2022, Frank, who this Court has noted is "an attorney and frequent class-action objector,"[4] filed an objection to the Motion for Final Approval. *Id*. Frank states that he purchased his Neutrogena non-aerosol sunscreen *after* Plaintiff Serota's class action lawsuit was filed in May 2021 and *after* Defendant's widely publicized nationwide recall was announced on July 14, 2021. Dkt.83-1 at ¶6 (Frank Decl.). The only reasonable inference that can be drawn from the undisputed facts is that Frank, as a frequent class-action objector, sought to manufacture his standing

---

[4] *See Williams v. Reckitt Benckiser LLC*, 65 F. 4th 1243, 1247 (11th Cir. 2023).

through self-inflicted harm. In other contexts, such deliberate conduct has been held insufficient to confer standing. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F. 3d 917, 931 (11th Cir. 2020) (holding plaintiffs "cannot manufacture standing merely by inflicting harm on themselves") (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 416 (2013)); *Barber v. Bryant* to this: *Barber v. Bryant,* 860 F. 3d 345, 354 (5th Cir. 2017)*, cert. denied,* 138 S.Ct. 652 (2018) (holding in Establishment Clause case that injury sufficient to confer Article III standing "cannot be manufactured for the purpose of litigation").

Plaintiffs filed an opposition to the objection on August 8, 2022, and Frank filed a reply on August 11, 2022. Dkt.95 at 10. The Court held a Final Approval Hearing on Plaintiffs' Motion for Final Approval on August 12, 2022, where it heard argument from counsel for Plaintiffs, Defendant, and Frank. *Id*. After considering all the evidence and with the benefit of oral argument, the District Court found that Frank's arguments were without merit and granted Final Approval to the Settlement:

> The Court, having considered the Settlement Agreement including all of its exhibits; the objections and comments received regarding the settlement; all motions and other court filings by objectors; the arguments and authorities presented by the parties and their counsel in their briefing; the arguments at the final approval hearing on August 12, 2022; and the record in this action, and good cause appearing, hereby finds the Settlement is fair[,] reasonable and adequate, and certifies the Settlement Class.

*Id*. at 19. Frank appealed.

7

## IV. STANDARD OF REVIEW

This Court reviews "an order approving a class action settlement for abuse of discretion. And because determining the fairness of the settlement is left to the sound discretion of the trial court, we will not overturn its decision absent a clear showing of abuse of that discretion." *In re Equifax Inc. Customer Security Breach*, 999 F. 3d1247, 1273 (11th Cir. 2021) (internal quotations omitted), *cert. denied*, 142 S.Ct. 431 (2021).

## V. SUMMARY OF ARGUMENT

Frank's scurrilous accusations of impropriety in the settlement process find no support in the record.  That is because they are baseless.  As repeatedly found by the District Court, "the terms of the Settlement belie any sort of self-dealing or other conflict-of-interest concerns." Dkt.95 at 22. Frank submitted no evidence to the contrary. Further, the Settlement provides exceptional benefits to Class Members: 100% recovery of actual damages for recalled products, voucher recovery for products unaffected by the recall, and significant injunctive relief designed to prevent contamination in the future. *Id*. at 25. Hence, contrary to Frank's claims, and as noted in the Final Order, "[t]here is no 'better settlement'" that could have been achieved. *Id.* The District Court did not abuse its discretion when it approved this generous settlement of contested claims as fair, reasonable, and adequate.

Although Frank purports to raise six issues on appeal, his arguments reduce

to his false contention that the District Court did not pay enough attention to his objections and that Class Counsel's slice of the settlement pie is unreasonably large. As the record makes clear, the District Court considered and rejected Frank's arguments, and correctly found that Class Counsel's request for fees and costs were consistent with this Court's precedents. *Id*. at 1-2, 19, 24-25, 28-29. The District Court did not abuse its discretion, so its judgment should be affirmed.

## VI. ARGUMENT

### I. Plaintiffs Have Article III Standing to Seek Prospective Injunctive Relief

Having manufactured his own standing, and having never raised the argument below, Frank first asserts that Plaintiffs lacked standing to seek injunctive relief. Opening Br. at p. 15 (citing *Williams v. Reckitt LLC*, 65 F. 4th Cir. 2023). Frank claims Plaintiffs are mere past purchasers, and thus lack a sufficient risk of future injury to seek prospective relief. *Id*. at 17-18. Frank is incorrect.

To seek injunctive relief, a plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston v. Marod Supermarkets, Inc*., 733 F. 3d1323, 1328 (11th Cir. 2013) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga*., 247 F. 3d1262, 1284 (11th Cir. 2001)). Thus, a party has standing to seek injunctive relief if the party shows "a real and immediate—as

opposed to a merely conjectural or hypothetical—threat of *future* injury." *Id*. at 1329 (emphasis in original). Plaintiffs easily meet Article III's requirements.

Plaintiffs are "long time users" of Defendant's sunscreen products. Dkt.4 at 25. And, quite sensibly, Plaintiffs *want* to purchase Defendants' Sunscreen Products in the future because they wish to receive the benefits of protecting their skin from ultraviolet radiation. Like any sensible consumer, they seek to receive these benefits without risking injuries from benzene exposure. And thanks to the injunction, Plaintiffs (and the scores of absent Class Members) do not need to mitigate the risk of skin cancer at the cost of elevated risk of other cancers linked to benzene. Plaintiffs had imminent and concrete plans to purchase sun protection and would suffer a tangible harm if that sunscreen contained carcinogenic levels of benzene. The injunction they sought and received falls within the heartland of the case-or-controversy requirement of Article III.

*Williams*, which Frank relies on, is dissimilar because in that case, "none of the Named Plaintiffs" alleged that they planned "to purchase any of the [defendant's] Products again in the future[.]" *Williams*, 65 F. 4th at 1247. Rather, the plaintiffs stated that they "would like" to purchase products from the defendant again "if" it develops entirely new, hypothetical products—with different active ingredients not known to exist—that "truly improve[] brain performance." *Id*. at 1254. The plaintiffs did not provide "any specification of *when* the some day will be." *Id*. at

10

1255 (emphasis in original). That conjectured product that *did not exist* could hardly supply the real and immediate plans to support injunctive relief. Where "all indications [were] that the Named Plaintiffs will not purchase [defendant's] Products again, given the plethora of false statements allegedly made in [the defendant's] advertising and the purportedly 'worthless' nature of the Products," *id.* at 1256, there is no standing.

Unlike in *Williams*, as "long time users" of Defendant's products, Plaintiffs have imminent, concrete plans "to purchase Defendant's Sunscreen Products in the future if they can be assured that the Sunscreen Products are unadulterated and meet the advertising claims." Dkt.4 at 25. Plaintiffs therefore intend to purchase Defendant's sunscreen products again when the Settlement's injunctive relief mandate takes effect, which ensures that the products are no longer adulterated with unsafe levels of benzene.[5] Thus, unlike plaintiffs' desire to buy hypothetical, non-existent products "some day" in *Williams*, the injunctive relief these Plaintiffs seek concretely addresses how the threat of future harm might be alleviated, and describes

---

[5] The Settlement's injunctive relief mandate requires that Defendant modify its manufacturing practices to test for benzene in its sunscreen products before distribution, and not release any products that contain unsafe levels of benzene. *See* Dkt.95 at 7.

11

the imminent scenario of "if [and] when" Plaintiffs would purchase Defendant's products again. *Id*. at 1255.[6]

Frank also argues in a conclusory fashion that the District Court improperly adjudicated claims over "materially different products"—i.e. aerosol and non-aerosol products—that no named Plaintiff alleged they had purchased. Opening Br. at 15. However, Frank fails to explain *how* the products are "materially different," meaning this undeveloped argument should be treated as abandoned. *See In re Equifax*, 999 F. 3d at 1273 n.19 ("Although Mr. Frank says in passing that Rule 23(e)(2)(D) was not satisfied, he does not press it with any argument or authority. We therefore treat his argument abandoned"); *Blue Martini Kendall, LLC v. Miami Dade County Fla*., 816 F. 3d 1343, 1349 (11th Cir. 2016) ("As a general

_____

[6] It also bears noting that, unlike the "brain performance supplements" at issue in *Williams*, sunscreen is a product that a majority of Americans purchase and use on an ongoing basis, and whose purchase and use is affirmatively recommended by the FDA and other public health authorities. *See, e.g.,* FDA, *An update on sunscreen requirements: The deemed final order and the proposed order* (Dec. 16, 2022), https://www.fda.gov/drugs/news-events-human-drugs/update-sunscreen-requirements-deemed-final-order-and-proposed-order ("Sun safety is important for everyone, including people of all skin tones. Consumers should continue to use sun protection measures, including using broad spectrum sunscreen of SPF 15 or higher[.]"); Chitale, Radha. ABC News, *One-Third of Americans Don't Use Sunscreen*, https://abcnews.go.com/Health/SkinCare/story?id=7637104&page=1 (noting that 69% of Americans used sunscreen at least "occasional[ly]"). Therefore, Plaintiffs' allegations of intent to purchase in the future are inherently more plausible than those in *Williams*.

12

rule, an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court").

But even if Frank's argument were not abandoned, the products are *not* materially different insofar as the FAC alleges that *all* of Defendant's sunscreen products, both aerosol and non-aerosol, are marketed in the same way—as sunscreen—and both categories of products failed to include labeling advising consumers of the presence of benzene. Dkt.4 at 16. *See Weiss v. General Motors, LLC*, 418 F.Supp.3d 1173, 1180 (S.D. Fla. 2019) (plaintiffs have standing to pursue claims on behalf of class members who purchased different products where the alleged defect is "materially identical" from product to product); *Collins v. Quincy Bioscience LLC*, 2020 WL 3268340 at *15 (S.D. Fla. Mar. 19, 2020) (named plaintiff had standing to represent other class members who purchased other varieties of a product that contained the same active ingredient).  In other words, there are no *alleged* misrepresentations that only apply to aerosol sunscreen products and not non-aerosol products. As a result, Plaintiffs have standing to raise claims for both aerosol and non-aerosol products because they assert the same injury related to the alleged misrepresentations as absent Class Members (such as Frank) who purchased both products. *See Williams*, 65 F. 4th at 1260 (noting that the named plaintiffs likely have standing with respect to all affected products because those "claims of injury that are based on the same misrepresentations target the same

13

conduct by [the defendant], and the 'injury suffered' will be identical"). Of course, the fact that non-aerosol purchasers received any relief at all—despite the fact that subsequent testing revealed no benzene in those products—is a testament to the value of the Settlement to non-aerosol and aerosol purchasers alike.

## II. Frank's Remaining Arguments Lack Merit

### A. The Settlement Provides Genuinely Valuable Injunctive Relief Because it Provides Plaintiffs with Binding and Enforceable Protection against Dangerous Benzene Exposure

Frank's argument that, "undirected prospective relief, such as changing the defendant's testing of future supply chains, cannot make a Settlement in which a class releases its past damages claims fair" is irrelevant and misplaced. Opening Br. at 42. Settlement agreements that require a defendant manufacturer to implement nonmonetary injunctive measures can "afford valuable relief" that "will benefit the class." *Allen v. Bedolla*, 787 F. 3d1218, 1225 (9th Cir. 2015); *see also Ferron v. Kraft Heinz Foods Co*., 2021 WL 2940240 at *9 (S.D. Fla. July 13, 2021) ("The fact that the Settlement secures for the Class significant monetary relief and ensures that Defendant will remove or correct the Challenged Language from its Products weighs heavily in favor of approving the Settlement"). The injunctive relief available under this Settlement has "significant value for the Settlement Class" for many reasons, but primarily because "the injunctive relief that Defendant[] [has] agreed to for purposes of the Settlement *directly address*[*es*] the issues raised by the Plaintiffs in

14

their Complaint[].” *Hillis v. Equifax Consumer Servs., Inc.*, 2007 WL 1953464 at *11 (N.D. Ga. June 12, 2007) (emphasis added). The value of the Settlement to Class Members remains significant in scenarios like the current case “*even if* some of the value goes to the general public.” *Fitzhenry-Russell v. The Coca-Cola Co.*, 2019 WL 11557486 at *6 (N.D. Cal. Oct. 3, 2019) (emphasis added); *see also In re TracFone Unlimited Services Plan Litig.*, 112 F.Supp.3d 993, 1005 (N.D. Cal. 2015) (approving the requested injunctive relief where “the Court finds that the injunctive relief will have significant value for both class members and the general public”).

This is because long time customers of Defendant’s products, like Plaintiffs, derive value and benefit from a “binding and enforceable” injunction that requires Defendant to make sought after changes to its manufacturing practices relating to benzene, even if the Defendant has already indicated willingness to provide similar relief voluntarily. *In re Wawa, Inc. v. Data Security Litig.*, 2022 WL 1173179 at *9 n.4 (E.D. Pa. April 20, 2022) (rejecting objector Frank’s claim that the injunctive relief under the settlement “is illusory if it was in the company’s interest to institute the changes anyways because, as is the case here, ‘the Settlement will make the injunctive relief both binding and enforceable’”) (quoting *Zapeda v. PayPal, Inc.*, 2017 WL 1113293 at *13 (N.D. Cal. Mar. 24, 2017)). Put simply, “absent a judicially-enforceable agreement, [Defendant] would be free … whenever it wanted” to return to its manufacturing processes which result in unsafe levels of

15

benzene in its products—the exact opposite of the meaningful result Plaintiffs sought in their prayer for relief, Dkt.4 at 56-57. *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F. 3d 811, 825 (9th Cir. 2012).[7]

Moreover, at least in this case, there is every reason to believe that past purchasers and future purchasers are largely *the same people.* Again, this case involves a functional and beneficial product—sunscreen—that consumers purchase repeatedly and routinely. Plaintiffs plausibly allege that they intend to purchase Defendants' sunscreen again if the injunctive relief at issue is sustained.  Frank provides no evidence that there is anyone in the class (other than perhaps himself) who feels differently.[8] Indeed, the notion that past purchasers of those products would "stop[] doing business" with Defendant and switch *en masse* to other

---

[7] *See also Zapeda v. PayPal, Inc.*, 2017 WL 1113293, at *13 (N.D. Cal. Mar. 24, 2017) (rejecting arguments that injunctive relief is illusory because "the Settlement will make the injunctive relief both binding and enforceable, ensuring that Defendants maintain such practices until two years following the date of the Preliminary Approval Order"); *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Prac. Litig.*, 2015 WL 7282543 at *10 (D. N.H. Nov. 16, 2015) (overruling objector's claim that class settlement's "injunctive relief is valueless," finding that the settlement agreement provides a "meaningful benefit to the Class" because it "provides a binding, and otherwise absent, limit on Colgate's ability to reintroduce triclosan into Softsoap Antibacterial").

[8] Notably, Frank did not assert in the District Court that he will *never* purchase a Defendant's sunscreen product again—merely that he "*currently* has no plans" to do so. Dkt.83-1 at ¶10 (Frank Decl.) (emphasis added). Thus, Frank does not even establish that the prospective relief at issue will not benefit *him*.

16

sunscreen manufacturers—manufacturers who are not subject to injunctions like the one at issue—is especially implausible. Opening Br. at 42.

Where, as here, past and future purchasers largely overlap, past purchasers, such as Plaintiffs, will benefit from injunctive relief to protect themselves and unnamed Class Members against the threat of *future* harm from such products. And it is clear under applicable case law that district courts may consider the benefit of such injunctive relief in their valuation of the relief obtained on behalf of the class. *See Poertner v. Gillette Co*., 618 F. App'x. 624, 628 (11th Cir. 2015), *cert. denied*, 136 S.Ct. 1453 (2016) (rejecting objector Frank's claim that the nonmonetary relief was illusory, finding that the district court's inclusion of the "value of the nonmonetary relief . . . as part of the settlement pie" was not an abuse its discretion); *Pinto v. Princess Cruise Lines*, 513 F.Supp.2d 1334, 1342-1343 (S.D. Fla. 2007) (noting that when determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts may "consider not only the compensatory relief, but also the economic value of any prospective injunctive relief obtained for the class").

Frank also cites *Pampers* for the proposition that the injunctive relief must be evaluated primarily on how it compensates class members, not hypothetical future consumers. Opening Br. at 40 (citing *In re Dry Max Pampers Litig.*, 724 F. 3d 713 (6th Cir. 2013)). But Frank's reliance on *Pampers* is also inapt, because diapers—

17

unlike sunscreen—are products that any given consumer purchases for only a limited period of time. By the time a class action involving diapers was settled, the population of future purchasers and the population of past purchasers inevitably diverged.  As argued below, that is not the case here. *See* Tr. at 27:15-25. Sunscreen is not a one-time purchase; it is something people use their whole lives.  *Id*. Thus, those who purchased Defendant's sunscreen in the past are likely to do so in the future, especially if the remedial measures provided for in the Settlement are implemented in a manner that is judicially enforceable. *Id*.

Moreover, distinctly different from the Settlement at hand, the unnamed *Pampers* settlement class members "received nothing but illusory injunctive relief because" they received no cash relief whatsoever. *Pampers*, 724 F. 3d at 722. Here, the Settlement provides significant monetary relief to *all* class members in relation to the value of their claims and the risks of this litigation.   Class Members in this case will receive "100% recovery of actual damages for recalled and affected products, a recovery for non-affected products in the form of a voucher that can be used for any Neutrogena or Aveeno product (not just sunscreens), and injunctive relief." Dkt.95 at 25.

Lastly, Frank contends that, in light of Plaintiffs allegation that "there is no safe level of benzene in sunscreen," the proposed injunctive relief is "worthless" insofar as it allows for up to 1 part per million ("ppm") of benzene in finished

18

sunscreen products. Opening Br. at 19. However, as found by the District Court, the proposed injunctive relief is valuable and reasonable in light of the facts obtained through discovery, the risks of continued litigation, and the likely defenses raised in the case. *See* Dkt.95 at 22-23 ("[t]he stage of the proceedings and the discovery completed weigh in favor of approval. …Continuing this action without a settlement would have involved several major litigation risks and delays"); Tr. at 28:6-7 (Defense counsel noting: "We have defenses that we might have raised against consumers, had we been unable to settle").

Importantly, as explained above, this Settlement provides for rigorous, *judicially enforceable* testing standards and product specifications that far surpass Defendant's previous practices and are well in excess of what the FDA would require under current guidance. As summed up by Defendant's counsel at the Final Approval Hearing:

> And as has been said through the Settlement [A]greement, we have undertaken to carry out a variety of corrective actions, which are, by now, enforceable promises by contract and with the imprimatur of the Court, once final approval is granted. These corrective actions include specifications, testing specifications, and benzene level testing that is well in excess of what the FDA would require this industry [sic] [to perform]. They require testing of finished goods, and they require a variety of other steps to ensure the safety of the products going forward, which we are happy to do, but which can't be denied have value to consumers who purchase our products going forward.

19

Tr. at 26:21-27:7. Accordingly, as recognized in the Final Approval Order, "[t]he stage of the proceedings and the discovery completed weigh in favor of approval." Dkt.95 at 22-23.

### B. The Negotiated Extension of Defendant's Refund Program in the Settlement Provides a Benefit to the Class

Frank claims that the Plaintiffs' securing a six-month claim period for Class Members provided no benefit to the Class. Opening Br. at 37. But, as a practical matter, providing a full six months for consumers to obtain full refunds is unquestionably a benefit to the Class. By contractually requiring Defendant to "hold open and not discontinue" the refund program until January 14, 2022—a full six months after Defendant's initial recall announcement—consumers were guaranteed additional time to make claims, when Defendant could otherwise have stopped the refund program at any time. Dkt.55-9 at 13-14. As noted by Defendant's counsel at the Final Approval Hearing, the negotiated relief was a "positive" thing for the Class because it allowed "people to make claims who otherwise might not have been able to make claims." Tr. at 52:17-19.

Moreover, that Defendant did not *publicly announce* the program's termination date at the time of the initial recall in July 2021 does not mean that Defendant originally meant to hold the refund program open in perpetuity. Frank offers no evidence, nor could he, that Defendant ever agreed to hold the refund

program open for any fixed duration of time absent the Settlement. *See Allen*, 787 F. 3d at 1225 (agreements that require a defendant manufacturer to implement nonmonetary injunctive measures can "afford valuable relief" that "will benefit the class").[9] For that reason, Frank's claim that the negotiated extension "does not obligate" Defendant "to do anything it was not already doing" is wholly unsupported by the record. Opening Br. at 37-38.

Still, Frank cites *Koby v. ARS Natl. Serv, Inc*., 846 F. 3d 1071 (9th Cir. 2017), for the proposition that courts do not credit settlements with the value of preexisting relief because obligating a defendant to continue doing what it was doing has no real value. *Id*. *Koby* is not remotely on point. There, as part of the challenged settlement, the defendant agreed ***in 2013*** to an injunction that "merely require[d] [it] to continue using the same voicemail message it voluntarily adopted back ***in 2011***" for "its own business reasons." *Koby*, 846 F. 3d at 1080 (emphasis added). Here, the components of the agreed-to injunctive relief are not measures that Defendant had already voluntarily implemented years before the Settlement. Instead, Defendants agreed to hold open a refund program they began *after* Plaintiffs filed suit. Again, mere unsupported speculation concerning how long Defendant might have voluntarily continued the refund program in the absence of the Settlement negotiations does not

---

[9] *See also* fn. 7, *supra*.

undermine the value of the negotiated time period—especially under the applicable abuse-of-discretion standard.

Frank further claims (incorrectly) that the refund program cannot count as a Settlement benefit because it was negotiated before the Settlement Agreement was signed on December 17, 2021, and only about 3% of the total claims were made between December 17 and January 14 (the refund termination date). Opening Br. at 37. However, the extension only materialized "because of" the parties' prior agreement in principle to settle the litigation, which was memorialized on October 21, 2021. *See* Dkt.95 at 5 (noting that the parties reached "an agreement in principle to settle the litigation on a class-wide basis, which was memorialized on October 21, 2021"). That Defendant agreed to implement the extension prior to executing the *final* Settlement Agreement is simply a manifestation the parties' agreement in principle to settle the litigation months before. Frank offers no evidence to the contrary.

## C. The District Court Fulfilled its Duty to Assess the Settlement Under Rule 23(e)(2)(C)

Frank incorrectly claims that the District Court failed to consider all the factors required under Rule 23(e)(2) and "ensure that class counsel have not unfairly bargained away the rights of those absent class members." Opening Br. at 22. In doing so, Frank devotes much attention to what he describes as the Settlement's "red

flags" of unfairness: the "clear-sailing" and "kicker" clauses relating to Class Counsels' fees and costs. *Id.* at 7, 29-30. In his view, these clauses are "subtle signs" of self-dealing. *Id.* at 32. But Frank offers no evidence, beyond unfounded accusations, that "class counsel use[d] negotiated fee provisions to favor themselves over their clients." *Id.* at 24. In fact, these claims are belied by the record.

The District Court's Final Order approving the Settlement shows that the Court was cognizant of its duty to ensure there was no self-dealing, and it repeatedly found there was none. The District Court noted its previous conclusion that the Settlement was "the result of arms-length negotiations between experienced class action attorneys," and that "[t]he record continue[d] to support that finding" at the Final Approval stage. Dkt.95 at 21. The Court further supported its finding of fairness, reasoning that "the participation of an experienced neutral mediator gives the Court strong confidence that the negotiations were conducted in an arms-length, non-collusive manner." *Id.* Hence, the Court concluded that "the terms of the Settlement belie any sort of self-dealing or other conflicts-of-interest concerns." *Id.* at 22. Frank offers no evidence to the contrary.

### D. The District Court Duly Considered Frank's Objections

Frank also seeks to undermine the Settlement by arguing that the Court's Final Order failed to adequately consider his grievances against the Settlement. Frank asserts that the District Court "failed to grasp" the "foundational premise of class-

23

action settlements" by making "inapt comparisons" to private party fee arrangements. Opening Br. at 23, 50-53. As a threshold matter, Frank is contradictorily complaining that, on the one hand the Court failed to give a reasoned response to his arguments, but on the other hand the Court responded to and rejected his arguments in an unpleasingly (to him) "inapt" fashion. *Id*. at 23. Frank cannot have it both ways. Moreover, a plain reading of the Final Order makes apparent that the District Court's purpose in providing examples of attorney's fees in other contexts was to illustrate that class attorneys who are able to efficiently negotiate significant class-wide relief have "done their work" and thus deserve a reasonable fee. Dkt.95 at 25.

In any event, Frank's objections lack justification in law. "When a class member objects to a settlement," the trial judge is obligated to "examine the settlement in light of the objections raised and set forth on the record a reasoned response to the objections including findings of fact and conclusions of law necessary to support the response." *Johnson v. NPAS Sols., LLC*, 975 F. 3d 1244, 1262 (11th Cir. 2020). The District Court "must allow the objectors to be heard but is not 'required to open to question and debate every provision of the proposed compromise.'" *Hamilton v. Hall*, 2012 WL 13122969 at *2 (N.D. Fla. Feb. 12, 2012) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Nor is the District Court required to detail all of the reasons for its conclusions. *See Nelson v. Mead*

24

*Johnson & Johnson Co.*, 484 F. App'x 429 (11th Cir. 2012) (affirming district court's finding that settlement was fair, adequate, and reasonable, holding that "[a]lthough [objector] argues that the district court failed to 'provide its reasoning for overruling the objections,' the district court gave [objector] the opportunity to argue her objections at the hearing, and the district court explained why those objections were without merit").

The District Court here made clear that it thoughtfully considered all of the arguments Frank raised below, including those made in the papers and at the Final Approval Hearing.  Dkt.95 at 19 (noting consideration of relevant materials); *see also In re Pacific Enters. Sec. Litig.*, 47 F. 3d 373, 377 (9th Cir. 1995) (stating that a district court's "conclusory statement [that the settlement was fair and reasonable] alone would not be satisfactory, but the record reflects that [the judge] also held an extensive settlement hearing where he responded to ... objections and explained why the derivative settlement is fair"). The Court's 30-page ruling is the exact opposite of the 7-page "boilerplate" ruling criticized in *Johnson*.  Taken as a whole, the record supports the conclusion that the District Court afforded meaningful consideration to Frank's objections and gave a reasoned response to those objections.

For instance, a review of the Final Order shows that the Court worked through the considerations enumerated in Rule 23(e)(2)(C). *See* Dkt.95 at 19-23. Rule 23(e)(2)(C) requires the District Court to consider the impact of Congress' 2018

25

amendments to Rule 23 on its analysis of the fairness of the class-action settlement, including "the effectiveness of any proposed method of distributing relief to the class," Fed. R. Civ. P. 23(e)(2)(C)(ii), and "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Final Order explicitly acknowledges the Court's mandate to consider all the factors listed in Rule 23(e)(2), including the provisions of Rule 23(e)(2)(C)(ii)-(iii) in particular. Dkt.95 at 19-23. Frank complains the District Court's analysis of these factors is unsatisfactory. However, the reasoned conclusions more than satisfy the discretion afforded to the District Court overseeing the settlement process of this complex, multi-district litigation.

With respect to Rule 23(e)(2)(C)(ii), "the goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg and Rubenstein on Class Actions, § 13.53 (6th ed.). On this point, the District Court first observed the parties had complied with the court-approved notice requirement, to which there was no objection. Dkt.95 at 9. That "notice campaign included paid print, digital, and social media advertising, as well as the creation of a toll-free telephone hotline, a dedicated website, and a dedicated e-mail address." *Id*. The notice program "reached at least 75% of potential class members, with a claims rate of approximately 2.88%." *Id*. This claims rate is commensurate with other consumer class actions with similar

notice plans, and is higher than many that are routinely approved in this Circuit. *See, e.g., Poertner*, 618 F. App'x at 626 (affirming approval of settlement where only 55,346 of 7.26 million class members—less than 1%—filed claims). "Ultimately, over 209,000 claims were received and processed by the Settlement Administrator." *Id*. "Only two requests for exclusion from the class were received." *Id*.  Simply stated, a successful notice campaign with an above typical claims rate should not be punished.

Next, the District Court found that the effectiveness of the proposed method of distribution was fair: "The Settlement offers all Class Members the same relief— a refund for Aerosol Products purchased and a voucher for Non-Aerosol Products purchased." *Id*. at 19. The Court further found that the monetary recovery and injunctive relief negotiated on behalf of Class Members was substantial: "The Settlement here offers a 100% recovery of actual damages for recalled and affected products, a recovery for non-affected products in the form of a voucher that can be used for any Neutrogena or Aveeno product (not just sunscreens), and injunctive relief, rendering it 'a rare class action Settlement which provides complete relief.'" *Id*. at 25 (quoting *Begley v. Ocwen Loan Serv., LLC*, 2017 WL 11672899 at *4 (N.D. Fla. Nov. 22, 2017)).  Consistent with Rule 23(e)(2)(C)(ii), the District Court thus held that "[t]his Settlement provides immediate, real, substantial, and practical benefits to the Class Members." *Id.*

27

Likewise, with respect to the "terms of any proposed award of attorney's fees" under Rule 23(e)(2)(C)(iii), the District Court devoted several pages of its order to this very issue, concluding that the distribution of fees and costs was not disproportionately large compared to the amount of relief reasonably expected to be provided to the Class. *Id.* at 26-29. Specifically, the Court found that "[t]he requested amount of $2,500,000 in Attorneys' Fees and $100,000 in Expenses comports with both the Settlement Agreement and Eleventh Circuit law." *Id*. at 27. Citing relevant authority, the District Court found that "the fee and cost payment is separate from the relief due to the Class [M]embers"; the parties negotiated the fees and cost provisions "only after reaching agreement on all other material terms of this [S]ettlement"; and that the fee request "represent[s] approximately one-third of the common fund," which was within the range approved by courts in this jurisdiction. *Id*. at 28.

Although not required, the District Court also performed a lodestar cross-check to ensure that the fee produced was in the ballpark of an appropriate fee, and found that the "cross-check supports the reasonableness of the requested fee award." *Id*. "Given the risks inherent in this litigation, the efficient way in which Class Counsel was able to negotiate a nationwide resolution to this matter impacting both recalled and non-recalled sunscreen products, and the significant value of the changed business practices adopted by [Defendant], such an award is appropriate."

28

*Id*. at 29.  In the end, the Court held that "consideration of each of these [Rule 23(e)(2)] factors and the *Bennett* factors, supports a finding that the [S]ettlement is fair, reasonable, and adequate and should be approved." *Id*. at 19. Frank's claims to the contrary are thus not supported by the record.

### E. The District Court's Common Fund Settlement Valuation is Supported by the Record

Frank next argues that the District Court failed to adequately explain its valuation of the Settlement's common fund.  Again, this assertion is unsupported. At the Final Approval Hearing, the Court explained that it considered there to be "three baskets of recovery" for the Class Members. Tr. at 7:1-2. First, the voucher recovery worth $1.75 million. *Id*.  Second, the "close to $10 million that deals with the actual recovery" in the form of refund checks issued to claimants. *Id*. at 7:3-5 Third, "the value of the nonmonetary relief, which has been argued is approximately $80 million." *Id*. at 7:5-7

In response, Defendant's counsel corrected the District Court's accounting of the total amount of the asserted common fund, noting that the "roughly 10 million in refund checks that were issued by [Defendant], are included within that 80 million." *Id*. at 21:14-16.  Defendant's counsel explained that the refunds and injunctive relief alone amount to "roughly $80 million in hard costs to [Defendant], which we believe is a fair measure," and is a "fair way of thinking about the value

29

of the relief that has been obtained by the [C]lass." *Id*. at 22:15-19. "And that is not including the $1.75 million in vouchers for these unaffected products," *id*. at 22:21-22, which Defendant's counsel confirmed was extended "to consumers who purchased the non[-]aerosol products that were included in the complaint." *Id*. at 25:19-21.

In response, without any supporting evidence, Frank argued that "the cost [incurred by] the [D]efendant is not a benefit to the class," *id*. at 31:17-18, because, among other things, Defendant would have issued the recall and refunded consumers anyway to protect its "brand image." *Id*. at 37:14-17. As characterized by the District Court at the Final Approval Hearing, this assertion supposes the flatly erroneous notion that "the recall has nothing to do with the filing of the complaints." *Id*. at 34:14-18 (discussing the timing of Plaintiffs' complaints in May 2021 and refund announcement in July 2021 in distinguishing out-of-circuit precedent).

Notably, Frank's argument is similar to the one he made in *Poertner*, which was rejected by this Court. There, Frank asserted that the non-monetary relief provided under the Settlement was illusory because defendant Gillette was no longer selling the challenged batteries when it agreed to stop putting the allegedly misleading statements on the batteries' packaging. *See Poertner,* 618 F. App'x. at 629. In affirming the District Court's decision approving the settlement, this Court held that Frank did not present any "contradictory evidence" to refute the District

30

Court's finding that Gillette's decision to stop selling and marketing the batteries was motivated, at least in part, by the present litigation. *Id.* The same goes here.

In response to Frank's assertion, the District Court openly questioned Frank's unsupported suggestion that Plaintiffs' lawsuits had nothing to do with Defendant's recall and subsequent refund payments: "I think the timing is significant because the recall and all of that is approximately two months after the [Plaintiffs'] complaint was filed, as opposed to [a] recall and then complaints coming in." Tr. at 6:17-20. The court then posited this question to Frank's counsel:

> THE COURT: If I were to, consistent with your argument, put the $70 million of nonmonetary relief aside, consider only the $1.75 million coupon number that we're talking about, add to that the approximate $9.8 million of the actual monetary relief that I know you're saying I shouldn't consider. But let's say I did that. Then based on your understanding of Eleventh Circuit case law and CAFA, would you then agree that $2.6 million for the plaintiffs' attorneys to recover in fees and costs [is] reasonable?
>
> MR. ANDREN: Well, it's certainly not the case here. But I would think something in that range could be. But not here. Again, like I've said, the $9 million is simply just as illusory as the $70 million here.

*Id*. at 33:9-22.  Frank therefore concedes, if the common fund consists of *only* the first two baskets of recovery—the refund payments and vouchers—the $2.6 million request is "in the range" of what the law allows.

Against this backdrop, the District Court took the matter under advisement, indicating its desire to "read some of the cases that were brought up specifically in today's hearing." *Id*. at 55:25-56:1. For the next six months, the District Court "independently read numerous cases and materials," including a law review article on class actions co-authored by Frank, "totaling thousands of pages in order to arrive at the proper result under the law." Dkt.95 at 10. In short, as outlined below, the District Court thoughtfully considered Frank's arguments and ultimately rejected them, with substantial citations to *this* Circuit's precedent.[10]

This procedural history, and the District Court's lengthy, well-reasoned Final Order, make clear that Frank's assertion that the Court "repeatedly ignor[ed] appellate precedents [he] cited" has no basis in fact. Opening Br. at 50. That Frank was unable to convince the District Court to follow non-binding and distinguishable

---

[10] Frank's arguments have similarly been rejected by numerous other federal courts in other jurisdictions. *See, e.g.*, *Kumar v. Salov North Am. Corp.*, 2017 WL 2902898, at *4 n.4 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) (rejecting objector Frank's argument that injunctive relief was illusionary because, although the label change occurred before the settlement was negotiated, "there is no question that it occurred after this litigation was initiated, and the old labeling could be revived absent [defendant's] agreement not to do so"); *City of Livonia Employees' Ret. Sys. v. Wyeth*, 2013 WL 4399015, at *5 (S.D.N.Y. Aug. 7, 2013) ("Petri's objection on this count does not seem grounded in the facts of this case, but in her and her attorney's [Frank's] objection to class actions generally"); *In re Groupon, Inc. Mktg. & Sales Prac. Litig.*, 2012 WL 13175871 at *6 (S.D. Cal. Sept. 28, 2012) (rejecting objector Frank's arguments that class settlement's injunctive relief was worthless and illusory).

case law, or accept his conclusory allegations of self-dealing, does not render the District Court's decision clearly erroneous.  Nor does the District Court's refusal to engage in a policy debate with Frank over the merits of class action settlements.

Nonetheless, contrary to Frank's claims, the District Court's written opinion did provide a reasoned response to Frank's objections to the Settlement, including: (1) the alleged illusory nature of the injunctive relief, Dkt.95 at 24-25; (2) the characteristics of the voucher benefits which distinguish them from "coupon" relief, *id*. at 6; (3) the alleged disproportionate distribution of fees, *id*. at 25-29; and (4) the alleged impropriety of "clear-sailing" and "kicker" clauses, *id*. at 21-22.  Based on the record, the District Court concluded that "[n]either Settlement Plaintiffs nor Class Counsel are disproportionally rewarded in relation to the Settlement [C]lass itself." *Id*. at 22.

Furthermore, although the District Court appropriately acknowledged the "significant value" of the injunctive relief obtained on behalf of the Class, consistent with its statements at the Final Approval Hearing, it put aside the $70 million in nonmonetary relief in its calculation of the common fund amount. *Id.* at 27-28 (finding $2,500,000 in fees represents "approximately one-third of the common fund"); Tr. at 33:12-14 (recognizing "the approximate $9.8 million of the actual monetary relief" made available in the form of refunds). In doing so, the District

Court maintained a "fundamental focus [on] the result actually achieved for class members." Dkt.95 at 27.

Removing the non-monetary relief from consideration did not fundamentally change the Court's reasonableness calculation, however. This is because, as the Court commented at the Final Approval Hearing, the first two "baskets of recovery"—the voucher recovery and refund checks—alone were sufficient to support the requested fees and costs. Tr. at 33:9-22. Thus, the Court rightly held that "[t]he requested amount of $2,500,000 in Attorneys' Fees and $100,000 in Expenses comports with … Eleventh Circuit law." Dkt.95 at 27. Continuing on, the Court found that "the requested fees of $2,500,000 will represent approximately one-third of the common fund." *Id*. at 28. In sum, because the $2.6 million fee and cost award is proportional to the actual relief obtained—which the District Court found to be worth at least $9.8 million—the fee and cost award was not an abuse of discretion.[11]

### F. The Vouchers Are Not "Coupons"

---

[11] Frank's argument that the Final Order renders it "hard to decipher" how the court valued the proposed forms of relief is irrelevant. Opening Br. at 35. The record makes clear that the District Court did *not* include the $70 million nonmonetary relief in its valuation of the common fund, leaving only the actual monetary relief obtained and the vouchers. In noting the fee and cost award fell within the one-third guideline range for similar cases in this Circuit, the District Court demonstrated that even if the vouchers did not add *any* value to the settlement, the fee and cost award would still be reasonable. Dkt.95 at 28.

Frank insists that the District Court was required to calculate the redemption value of the vouchers awarded to the Class before awarding attorney's fees because, on appeal, he mischaracterizes the Settlement vouchers as "coupons" under the Class Action Fairness Act ("CAFA"). Opening Br. at 27. This argument fails on multiple levels. First, as noted above, the District Court concluded that the fee and cost award was reasonable without attributing *any value* to the vouchers.

Second, Frank's criticism of the vouchers is curious given that they represent a windfall for Class Members, such as himself, who purchased both aerosol and non-aerosol sunscreen products. Frank curiously attempts to claw away meaningful relief for claims that would quite possibly have failed should the action have proceeded to trial. If he were successful, Frank's claims would make Class Members worse off by every measure.

Third, in characterizing the vouchers as coupons, Frank incorrectly asserts that the vouchers offer "a limited range of products for discounts." *Id*. at 36. However, as noted in the Final Order: "[t]he relief offered by the Settlement provides for … (2) a voucher equal to the average retail selling price of the Non-Aerosol Products which may be used toward the purchase of *any* Neutrogena or Aveeno product(s)." Dkt.95 at 6 (emphasis added). Thus, as argued by Plaintiffs below, the vouchers do not provide a "discount" to Class Members as a coupon would, but instead provide each settling Class Member with a benefit toward *any* Neutrogena

or Aveeno product, not just sunscreen products.  Indeed, the vouchers offer Class Members a choice from hundreds of products for which ordinary consumers have need, including many that sell for less than what the typical non-aerosol purchaser will receive in voucher benefits. Tr. at 26:15-17; *see also* Dkt.87 at 7 n.3 (identifying dozens of Neutrogena skin cleansers alone that cost less than $9.96). Thus, Class Members need not contribute any more money to receive Defendant's products. And because the vouchers are transferrable, Class Members may sell them. Simply put, the vouchers are not coupons under CAFA. *See Fruitstone v. Sparten Race, Inc*., 2021 WL 2012362 at *5 (S.D. Fla. May 20, 2021) (noting that "a key characteristic of a coupon under CAFA is a discount—frequently a small one—on class members' purchases from the settling defendant"); *David v. Am. Suzuki Motor Corp.,* 2010 WL 1628362 at *7 (S.D. Fla. Apr. 15, 2010) (finding that proposed settlement was not a coupon, as the settlement "does not simply provide coupons premised on future purchases that enrich the [d]efendant," and highlighting that "[r]edemption of the award does not require any purchase on the part of class members"); *see also In re Online DVD-Rental Antitrust Litig*., 779 F. 3d914, 951 (9th Cir. 2015) (rejecting Frank's objection to settlement, finding that $12 gift card was not a coupon where it could be used to purchase any products on walmart.com, was freely transferrable, and did not require consumers to spend their own money); *Johnson v. Ashley Furniture Indus., Inc.* 2016 WL 866957 at *3 (S.D. Cal. Mar. 7, 2016) (finding that

36

that $25 merchandise voucher was not a coupon because "class members have choices as to what they may purchase with the voucher and may purchase an entire product as opposed to just reducing the purchase price").

The District Court also noted that "[t]he vouchers are transferable, may be aggregated, and expire not less than twelve (12) months from their date of issuance." Dkt.95 at 6. These characteristics further distinguish the voucher relief offered here from "coupon" relief under CAFA. *See Fruitstone*, 2021 WL 2012362 at *6 (finding that vouchers were not coupons where they could be used to purchase any product on defendant's website, were freely transferable, could be stacked, and did not require customers to spend their own money). Accordingly, the vouchers are not coupons under CAFA, and there was no requirement that the attorney's fee award be based on the redemption value.

### G. Class Members' "Near Unanimous Approval" of the Settlement Further Supports a Finding of Fairness

Finally, Frank's argument that the District Court relied on "irrelevant facts" in its Rule 23(e) analysis also fails. Opening Br. at 50. Interestingly, Frank disputes the deference the District Court gave to the "near unanimous approval of the proposed Settlement by the [C]lass [M]embers" while he simultaneously acknowledges that Class Member support is a "*Bennett* [F]actor" the District Court should consider in evaluating the fairness of a class action settlement. *Id*. Certainly,

even Frank could agree that, insofar as the *Bennett* Factors should guide the District Court's fairness analysis, such consideration cannot be called reliance on "irrelevant facts." *See Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005) (citing *Bennett v. Behring Corp.*, 737 F. 2d 982, 986 (11th Cir. 1984) (finding that "a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval"); *see also Cotton*, 559 F.2d at 1331 ("In assessing the fairness of the proposed compromise, the number of objectors is a factor to be considered . . . ."). Consequently, the District Court appropriately weighed the Class's support for the Settlement when it ruled on its fairness.

Even more fundamentally, as it relates to fairness, the Settlement Agreement allows for Class Members to opt-out if they have concerns about the Settlement. Dkt.95 at 17. *See Wilson v. EverBank*, 2016 WL 457011 at *1 (S.D. Fla. Feb. 3, 2016) (rejecting objector's claim that settlement was unfair, noting that "[t]o the extent that the objectors were unsatisfied with the significant recovery that the Settlement offers, they were given the opportunity to opt out and pursue their own claims in separate litigation, an avenue that eight other class members [out of 45,504 members nationwide] elected"); *Lee v. Ocwen Loan Serv., LLC*, 2015 WL 5449813 at *13 (N.D. Fla. Sept. 14, 2015) (finding that objector's "objections lack merit because objectors can **simply opt out** if they have concerns about releasing their claims.)" (emphasis in original). Yet, the Settlement's adequacy and reasonableness

38

is made manifest in that, out of over 209,000 claims, only two Class Members requested to be excluded.  Dkt.95 at 23-24.

### III.    The District Court Erred in Declining to Authorize Incentive Awards to Named Plaintiffs Residing in Florida

"A district court's decision to grant an incentive award to a named class representative is reviewed for abuse of discretion." *Muransky v. Godiva Chocolatier*, *Inc.*, 922 F. 3d 1175, 1196 (11th Cir. 2019), *vacated on other grounds*, 979 F. 3d 917 (11th Cir. 2020). The Settlement Agreement authorizes Class Counsel to seek reasonable Incentive Awards for the named Plaintiffs in the amount of $250.00 each, for a total of $3,000.00, for their services as the representatives of the Class. Dkt.95 at 17.  Initially, the Court observed at the fairness hearing that this is a "unique case for me because I, frankly, never had a class action type case in my years as a lawyer and as a judge with such low incentive fees." Tr. at 17:14-17. In its Final Order, the Court further noted that, under the Settlement Agreement, the "Incentive Awards would be paid separately by [Defendant] from the relief being offered to the Class Members, and would be in addition to any relief the Plaintiffs may receive in the refund and/or voucher programs." Dkt.95 at 18. In short, "[t]he [I]ncentive [A]wards here are nominal and well-deserved" and "[i]n no way could they be considered a salary." *Id.* Nevertheless, the District Court found that it was "bound by its parent court's decision in *Johnson*[,]*" id*., which, in the District Court's words, "seems to

indicate that incentive awards for plaintiffs are not appropriate." Tr. at 17:9-11. Thus, the District Court ultimately held that it could not "grant Plaintiffs' request for [I]incentive [A]wards pursuant to the Eleventh Circuit's ruling in *Johnson v. NPAS Sols., LLC*, 975 F. 3d1244 (11th Cir. 2020)." Dkt.95 at 17. Respectively, this finding was erroneous.

*Johnson* is distinguishable. In that case, this Court disallowed a proposed $6,000 incentive award to the named class action plaintiff in a case asserting claims under a *federal statute*, specifically the Telephone Consumer Protections, finding that the award akin to "part salary and part bounty." *Johnson*, 975 F. 3d at 1258. Unlike *Johnson*, all of the Plaintiffs' claims here are brought under state law. *See* Dkt.4 at ¶¶ 38-237. This fact renders *Johnson* inapplicable under the *Erie* Doctrine. Pursuant to the Supreme Court's decision in *Erie R.R Co. v. Tomkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity must apply substantive state law." *Bravo v. U.S.*, 577 F. 3d1324, 1325 (11th Cir. 2009).

In diversity cases, the issue of whether an incentive award is appropriate is governed by state law. *Roth v. GEICO General Ins. Co*., 2020 WL 10818393 at *3 (S.D. Fla. Oct. 8, 2023). *See Chieftain Royalty Co. v. Enervest Energy Insitutional Fund XIII-A, L.P*., 861 F. 3d 1182, 1195 (10th Cir. 2017) (addressing whether to grant service award, and holding that "[w]e think it clear that . . . *Erie* requires us to apply Oklahoma law"). Plaintiffs Serota and Somers are residents of Florida. Dkt.4

40

at ¶¶ 6-7. Moreover, Florida law permits incentive awards in class actions. *See Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.*, 12 So. 3d 850, 857 (Fla. 3d DCA 2009) (affirming $10,000 service award to class representative, noting that "[t]he position as a fiduciary for the class is less an honor than a headache"). Incentive awards in class actions are appropriate because, among other things, class representatives are "identified as a class litigant in public records (potentially affecting credit reports and disclosures for financing), [are] subject to fiduciary duties to the class, [and] may be deposed and required to produce records . . . and must meet with counsel[.]" *Id*.

Consistent with *Erie*, federal courts within this Circuit have refused to extend *Johnson's* holding "to diversity cases where governing state law permits incentive awards," particularly where, as here, "the incentive awards are to be paid separately and will not impact the recovery of any class member." *Roth*, 2020 WL 10818393 at *3; *see also South v. Progressive Select Ins. Co.*, 2023 WL 2733548 at *5 (S.D. Fla. March 21, 2023) (approving $10,000 incentive award to each named plaintiff under Florida law); *Venerus v. Avis Budget Car Rental, LLC*, -- F.Supp.3d --, 2023 WL 4673481 at *2-3 (M.D. Fla. May 25, 2023) (approving $25,000 service award to named class representative, finding that *Johnson* is inapplicable because under the *Erie* doctrine, substantive state law applied to the diversity action and Florida state law permitted class representative service awards); *Mitchell v. Allstate Vehicle and*

41

*Property Ins. Co.*, 2023 WL 5004064 at *6 (S.D. Ala. Aug. 3, 2023) (awarding $7,500 service awards to named class representatives, finding that *Johnson* "is inapplicable in diversity jurisdiction cases where the underlying claims arise under state law").

Moreover, the $250.00 Incentive Awards requested here are eminently reasonable. As found by the District Court, the "[i]ncentive [a]wards would be paid separately by [Defendant] from the relief being offered to the Class Members, and would be in addition to any relief the Plaintiffs may receive in the refund and/or voucher programs." Dkt.95 at 18. "The incentive awards here are nominal and well-deserved" and "[i]n no way could they be considered a salary." *Id*.

Because Florida law permits reasonable incentive awards in class actions, the District Court, sitting in diversity, erred in denying Plaintiffs' request for $250.00 Incentive Award payments to Florida resident Plaintiffs Serota and Somers. Moreover, this Court should remand this case for further consideration of whether the non-Florida resident Plaintiffs are similarly entitled to $250.00 incentive awards under their respective state's laws.

If the Court believes *Johnson* in fact controls and supports the District Court's decision, it should take the issue *en banc* and overrule the bar on incentive awards, which is a rule of decision that conflicts with every other court of appeals that has considered the question.

## VI. CONCLUSION

The District Court did not abuse its discretion in concluding, after careful consideration and analysis of the Settlement Agreement as a whole, as well as Frank's arguments, that the Settlement was fair, reasonable, and adequate. This Settlement gave every Class Member 100% recovery on actual damages for recalled sunscreen products, extends vouchers to Class Members for unaffected products that they can use for any Neutrogena or Aveeno product, or sell for cash, and offers significant injunctive relief designed to prevent contamination issues in the future. As noted by the District Court, there is no better settlement to be had. For these, and all the reasons offered in this brief, this Court should affirm the judgment and Final Order approving the Settlement as fair, reasonable, and adequate.

The only error in the District Court's Final Order is its determination that it could not grant Plaintiffs' request for incentive awards pursuant to the Eleventh Circuit's decision in *Johnson*.   For reasons already discussed, *Johnson* is inapplicable in diversity jurisdiction cases where, as here, the underlying claims arise under state law. Because Florida law authorizes incentive awards in class actions, at minimum, the District Court should have granted Plaintiffs' request to award $250.00 incentive awards to Plaintiffs Serota and Somers, both of whom are Florida residents. For these reasons, this Court should reverse the District Court's Final Order denying incentive awards to Florida resident Plaintiffs Serota and

43

Somers, and remand for further consideration the issue of whether *non-Florida* resident Plaintiffs are entitled to incentive awards under their respective state's laws.

Date: September 5, 2023        Respectfully Submitted,

By */s/R. Jason Richards*
**AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC**
R. Jason Richards (FL Bar # 18207)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
E-mail:   jrichards@awkolaw.com

44

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(7)(B) because this brief contains 10,525 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4, as counted by Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Date: September 5, 2023                    Respectfully Submitted,

                                           By */s/R. Jason Richards*
                                           **AYLSTOCK, WITKIN, KREIS &**
                                           **OVERHOLTZ, PLLC**
                                           R. Jason Richards (FL Bar # 18207)
                                           17 East Main Street, Suite 200
                                           Pensacola, FL 32502
                                           Telephone: 850-202-1010
                                           Facsimile: 850-916-7449
                                           E-mail:    jrichards@awkolaw.com

                                           Attorneys for Plaintiffs-Appellees/Cross
                                           Appellants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this September 5, 2023, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

By */s/R. Jason Richards*
**AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC**
R. Jason Richards (FL Bar # 18207)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail:   jrichards@awkolaw.com

Attorneys for Plaintiffs-Appellees/Cross
Appellants

46