**Case Nos. 23-11319, 23-11541**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

IN RE: JOHNSON & JOHNSON AEROSOL SUNSCREEN
MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION

KATHERINE BRENNAN,
individually and on behalf of all others similarly situated, *et al.*,
Plaintiffs-Appellees/Cross-Appellants,
v.
JOHNSON & JOHNSON CONSUMER INC., *et al.*,
Defendants-Appellees,

THEODORE H. FRANK,
Interested Party-Appellant/Cross-Appellee.

On Appeal from the United States District Court
for the Southern District of Florida
No. 0:21-md-03015-AHS

**Appellant/Cross-Appellee Frank's Response and Reply Brief**

Theodore H. Frank
John M. Andren
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
(703) 203-3848
ted.frank@hlli.org
*Attorneys for Appellant/Cross-
Appellee Theodore H. Frank*

**Certificate of Interested Persons and Corporate Disclosures**

Under 11th Cir. R. 26.1-2(b), Theodore H. Frank declares that the Certificate of Interested Persons and Corporate Disclosures contained in his opening brief is true, correct, and complete.

Dated: October 19, 2023

/s/ Theodore H. Frank
Theodore H. Frank
John M. Andren
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (703) 203-3848
Email: ted.frank@hlli.org

*Attorneys for Interested Party-Appellant/Cross-Appellee Theodore H. Frank*

# Table of Contents

Certificate of Interested Persons and Corporate Disclosures ............. C-1

Table of Contents ..................................................................................... i

Table of Citations ................................................................................. iii

Rule 28.1(c)(3)(A) Jurisdictional Statement ........................................... ix

Introduction ....................................... **Error! Bookmark not defined.**

Argument .............................................................................................. 4

I.    Plaintiffs lacked standing to bring their claims for injunctive relief and the district court lacked jurisdiction to adjudicate those claims. ..................................................................................... 4

II.   The district court's failure to properly analyze the settlement under Rule 23(e)(2)(C) requires reversal of the settlement approval. .................................................................................... 10

III.  The settlement approval cannot stand because class counsel takes $2.6 million for themselves while providing less than $1 million in coupon relief for class members. ............................ 13

    A.    The approval order errs by failing to determine the settlement value. ................................................................ 14

    B.    The potential value of the settlement cannot exceed— and is certainly less than—$1.75 million because only the coupon "bucket" is meaningful settlement consideration. ....................................................................... 17

        1.  The coupons are not worth $1.75 million to the class. .... 17

        2.  The refund program is not a settlement benefit. ............. 18

        3.  The putative prospective injunctive relief provides no settlement benefit because it is not consideration for the release of monetary damages claims. ....................... 21

C.    The approval order failed to provide a reasoned response to Frank's objections. ..............................................24

IV.    The "vouchers" are coupons and the district court's failure to analyze them as such dooms the settlement and fee approval under 28 U.S.C. §1712. ......................................................29

A.    CAFA mandates courts analyze whether a settlement contains coupon relief. ............................................29

B.    The "vouchers" are coupons subject to CAFA under any analysis..................................................................32

V.    The district court abused its discretion by relying on facts common to all class-action settlements and thus irrelevant to settlement fairness.........................................................37

VI.    Frank has standing. ..................................................................38

VII.    Plaintiffs' cross-appeal lacks merit; the district court properly held that *Johnson* precludes class representative payments. ....................................................................41

Conclusion ............................................................................43

Certificate of Compliance ..................................................45

# Table of Citations

## Cases

*Arkin v. Pressman,*
  38 F.4th 1001 (11th Cir. 2022) ........................................................ 13

*Beazer E., Inc. v. Mead Corp.,*
  525 F.3d 255 (3d Cir. 2008) ............................................................. 9

*Bennett v. Behring Corp.,*
  737 F.2d 982 (11th Cir. 1984) ............................................... 10, 37-38

*Berni v. Barilla S.P.A.,*
  964 F.3d 141 (2d Cir. 2020) ....................................................... 40-41

*In re Bluetooth Headset Prod. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) ......................................................... 24

*Briseño v. Henderson,*
  998 F.3d 1014 (9th Cir. 2021) .............................. 2, 4, 10-12, 24, 28

*Budinich v. Becton Dickinson & Co.,*
  486 U.S. 196 (1988) ......................................................................... x

*Campbell v. Facebook, Inc.,*
  951 F.3d 1106 (9th Cir. 2020) ....................................................... 24

*Cotton v. Hilton,*
  559 F.2d 1326 (5th Cir. 1977) ....................................................... 36

*Devlin v. Scardelletti,*
  536 U.S. 1 (2002) ........................................................................... 40

*In re Dry Max Pampers Litig.,*
  724 F.3d 713 (6th Cir. 2013) .............................................. 17, 20-21

*In re EasySaver Rewards Litig.,*
  906 F.3d 747 (9th Cir. 2018) ............................................. 29-30, 36

*In re Equifax Customer Data Sec. Breach Litig.*,
 999 F.3d 1247 (11th Cir. 2021) ................................................. 10, 15

*Faught v. Am. Home Shield Corp.*,
 668 F.3d 1233 (11th Cir. 2011) ........................................................ 23

*Holmes v. Cont'l Can Co.*,
 706 F.2d 1144 (11th Cir. 1983) .................................................... 8, 22

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
 931 F.3d 1065 (11th Cir. 2019) ..................................... 14, 25, 36-37

*\*Johnson v. NPAS Sols, LLC*,
 975 F.3d 1244 (11th Cir. 2020),
 *cert. denied sub nom. Johnson v. Dickenson*, No. 22-389,
 *and Dickenson v. Johnson*, No. 22-517 (U.S. Apr. 17, 2023)
 ........................................................... 3, 14, 25, 28-29, 36-37, 41-42

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*,
 773 F.3d 243 (11th Cir. 2014) ........................................................... 8

*Kim v. Allison*,
 8 F.4th 1170 (9th Cir. 2021) .......................................................... 12

*\*Koby v. ARS Nat'l Servs.*,
 846 F.3d 1071 (9th Cir. 2017) .................................................... 18-21

*Luevano v. Wal-Mart Stores, Inc.*,
 722 F.3d 1014 (7th Cir. 2013) ......................................................... ix

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ..................................................................... 4-7

*McKinney-Drobnis v. Oreshack*,
 16 F.4th 594 (9th Cir. 2021) ....................................... 3, 27-28, 34-36

iv

*Mertinez-Mendoza v. Champion Int'l Corp.*,
   340 F.3d 1200 (11th Cir. 2003) ..................................................ix-x

*Moses v. N.Y. Times Co.*,
   79 F.4th 235,
   2023 U.S. App. LEXIS 21530 (2d Cir. 2023)........................ 11, 32-33

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
   551 U.S. 644 (2007) ........................................................... 12

*Nelson v. Mead Johnson & Johnson Co.*,
   484 F. App'x 429 (11th Cir. 2012) ..................................... 25

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ...................................... 2, 4, 21

*Piambino v. Bailey*,
   757 F.2d 1112 (11th Cir. 1985) ......................................... 12

*Poertner v. Gillette Co.*,
   618 F. App'x 624 (11th Cir. 2015) ..................................... 19

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) .......................................... 9

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014) ............................. 3, 12, 31, 33-34, 38

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) .......................................... 18

*Roes v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ...................................... 10, 12

*RW Inc. v. Andrews*,
   534 U.S. 19 (2001) ......................................................... 12

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ........................................................... 42

*In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*,
    869 F.3d 551 (7th Cir. 2017) ........................................... 22

*In re Sw. Airlines Voucher Litig.*,
    799 F.3d 701 (7th Cir. 2015) ........................................... 33

*\*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ............................................. 2

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..................................................... 41

*Va. House of Delegates v. Bethune-Hill*,
    139 S. Ct. 1945 (2019) ....................................................... 8

*\*Williams v. Reckitt Benckiser LLC*,
    65 F.4th 1243 (11th Cir. 2023)
      ........................................... 1, 2, 4, 6-9, 13, 21, 30, 38-39

*Workman v. United Parcel Serv., Inc.*,
    234 F.3d 998 (7th Cir. 2000) ........................................... 39

**Rules, Statutes, and Constitutional Provisions**

28 U.S.C. §1291 ........................................................................ x

28 U.S.C. § 1653 ..................................................................... 40

*28 U.S.C. §1712 (Class Action Fairness Act)
    ....................................................... 3, 25-26, 29-30, 32-37

28 U.S.C. §1712(a) ............................................................ 18, 29

28 U.S.C. §1712(c) ............................................................ 18, 29

Fed. R. App. P. 4(a)(1)(A) .................................................................ix

Fed. R. App. P. 4(a)(3) ....................................................................ix

Fed. R. App. P. 4(a)(7)(A)(ii)...........................................................x

Fed. R. App. P. 4(a)(7)(B) ...............................................................x

Fed. R. App. P. 28(a)(4) ..................................................................ix

Fed. R. App. P. 28.1(c)(2)................................................................ix

Fed. R. App. P. 28.1(c)(3)(A)...........................................................ix

Fed. R. Civ. P. 23...................................................................... 18, 42

Fed. R. Civ. P. 23(e)............................................ 17, 24, 28, 37, 42-43

Fed. R. Civ. P. 23(e)(2) ................................................................. 13

Fed. R. Civ. P. 23(e)(2)(A)............................................................. 11

Fed. R. Civ. P. 23(e)(2)(B)..................................................... 2, 11, 27

*Fed. R. Civ. P. 23(e)(2)(C)................................... 1, 2, 4, 10-12, 25-26, 37

*Fed. R. Civ. P. 23(e)(2)(C)(ii) ........................................... 10-12, 26-27

*Fed. R. Civ. P. 23(e)(2)(C)(iii) .......................................... 10-12, 26-28

Fed. R. Civ. P. 23(e)(2)(D) ........................................................ 11, 27-28

Fed. R. Civ. P. 23(h) .......................................................... 13, 18, 28

Fed. R. Civ. P. 58(a).....................................................................ix

*U.S. Const., Art. III ........................................................ 1, 9, 23, 41, 43

**Other Authorities**

Federal Judicial Center,
 MANUAL FOR COMPLEX LITIGATION, § 21.312 (4th ed. 2008) .......... 19

Notes of Advisory Committee on 2018 Amendments to Rule 23 ........... 11

Scalia, Antonin & Bryan A. Garner,
 READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) ......... 12

Sheley, Erin L. & Theodore H. Frank,
 *Prospective Injunctive Relief and Class Settlements*,
 39 HARV. J. L. & PUB. POL'Y 769 (2016) ......................................... 22

## Rule 28.1(c)(3)(A) Jurisdictional Statement

Plaintiffs' cross-appeal brief violates Rules 28.1(c)(2) and 28(a)(4) by failing to include a jurisdictional statement.

Frank incorporates his opening brief's Rule 28(a)(4) jurisdictional statement on the question of district-court jurisdiction.

As part of its decision approving the settlement, the district court entered its ruling on class representative incentive awards on February 28, 2023, denying the award "at this time" under *Johnson*. 2 J.A. 200 n.8. But the court expressly retained jurisdiction on the question, with Plaintiffs being permitted to renew the motion should *Johnson* "ultimately be overruled." *Id.* On April 5, 2023, the district court issued an Order of Dismissal. 2 J.A. 203. Frank filed a notice of appeal on April 20, 2023. Dkt.99. This notice was timely under Fed. R. App. P. 4(a)(1)(A). Under Fed. R. App. P. 4(a)(3), Plaintiffs timely cross-appealed May 4, 2023. Dkt.102.

The district court did not enter final judgment on a separate document in connection with its settlement approval order as Fed. R. Civ. P. 58(a) requires. But this Court can treat the appeal as one from a proper final judgment because there are "clear signal[s] from the district court" that it intended to issue a final order at least when it issued its Order of Dismissal. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1020 (7th Cir. 2013); *see also Mertinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1215 n.35 (11th Cir. 2003) ("where a district court treats the

litigation as having ended—the court's judgment is final, and the appeal may go forward." (citation omitted)). In the alternative, the Rules consider the judgment entered 150 days after April 5, 2023, on Tuesday, September 5, 2023, and an appeal before then valid. Fed. R. App. P. 4(a)(7)(A)(ii), (B).

To the extent that the order is self-executing and became "final" when *certiorari* was denied in *Johnson v. Dickenson*, No. 22-389 on April 17, 2023, this is a "final decision," and this Court has appellate jurisdiction under 28 U.S.C. § 1291. If, on the other hand, a separate order is needed to make the decision explicitly "final," there is no jurisdiction under 28 U.S.C. § 1291 on the cross-appeal. *Mertinez-Mendoza* suggests that this is a final decision.

Because the question of class representative incentive awards would be a collateral judgment, the finality of the collateral order on incentive awards does not affect the § 1291 jurisdiction over the main appeal. *Cf. Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200-01 (1988).

## Introduction

This case is a replay of *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243 (11th Cir. 2023), both in terms of (1) Article III standing; and (2) the district court's failure to substantively address objections relating to Rule 23(e)(2)(C) and out-of-circuit precedent regarding calculation of settlement value and the fairness of disproportionate settlements. This is easy enough, but Plaintiffs[1] make resolution even easier by simply failing to address Appellant Frank's arguments.

Frank quoted and parsed Paragraphs 49 and 59 of Plaintiffs' complaint (1 J.A. 65, 67) at length, and argued that, under *Williams* and Supreme Court precedent, Plaintiffs had pleaded themselves out of Article III standing. OBxiii-xvi; OB4-5; OB17-20.[2] Plaintiffs purport to defend their standing, but never mention the language of their own complaint, much less address Frank's analysis of it. The word "valueless" is absent from the standing section of Plaintiffs' brief; Plaintiffs do not dispute that the settlement permits J&J sunscreen to contain up to 1 ppm benzene. The district court did not have Article III jurisdiction to evaluate settlement of injunctive-relief claims. *See* Section I below.

---

[1] For brevity and clarity, Frank refers to Plaintiffs-Appellees/Cross-Appellants as "Plaintiffs."

[2] OB and PB refer to Frank's opening brief and Plaintiffs' answering/cross-appeal brief respectively.

Frank argued that the district court erred because it should have considered *Briseño v. Henderson* and *Pearson v. NBTY* in evaluating settlement fairness. OB32-34. *Accord Williams*, 65 F.4th at 1261. Plaintiffs do not contest the validity of, or even mention, *Williams*'s analysis of settlement fairness evaluation, *Briseño*, or *Pearson*; they do not dispute that the district court ignored those cases. Frank argued that the district court's Rule 23(e)(2)(C) analysis improperly conflated that rule with Rule 23(e)(2)(B)'s requirements. OB20-34. It was reversible error to think that a finding of arm's-length negotiations resolves the question of self-dealing. Plaintiffs simply repeat (PB23) the district court's error without challenging or mentioning Frank's analysis of the Rule, and again never mentions *Briseño*. *See* Section II below.

The district court committed multiple reversible errors in valuing the settlement; a true valuation would prevent settlement approval because of disproportionality; and the district court erroneously failed to provide a reasoned response to several of Frank's arguments. OB30-47; *see* Section III below. Plaintiffs do not explain or quantify the district court's settlement valuation, or cite anywhere in the record where such quantification can be found. Frank argued that prospective injunctive relief to the world at large could not be considered part of the settlement benefit to *the class* under *Synfuel*. OB40-47. Like the district court, Plaintiffs do not mention *Synfuel*, much less argue that it is incorrect and should not apply here.

Plaintiffs do not dispute that the district court's opinion never mentioned or applied 28 U.S.C. § 1712. The "vouchers" here fall under the ordinary meaning of "coupon" under the Class Action Fairness Act; even under the incorrect *McKinney-Drobnis* decision, the "vouchers" are § 1712 coupons, and the district court's settlement fairness analysis and approval was error. OB47-49; *see* Section IV below. The words "ordinary meaning" and the *McKinney-Drobnis* and *Redman* cases are absent from Plaintiffs' brief.

Frank argued that the district court erred by overweighing or misapplying three factors in settlement approval, including two irrelevant ones. OB50-53. Plaintiffs defend only one of the three claimed errors, and then only to address a strawman argument instead of Frank's actual argument. *See* Section V below. They do not dispute that these errors were material.

Plaintiffs' argument against Frank's standing relies on fiction unsupported by the record and ignores evidence that is in the record. It is simply wrong. Moreover, to the extent that it relies on a speculative factual dispute that it never supported in the record or asked the district court to resolve, it is forfeited. *See* Section VI below.

Plaintiffs' cross-appeal lacks appellate jurisdiction, but is controlled by *Johnson* on the merits; their proposed diversity-jurisdiction exception to *Johnson* ignores that incentive awards are a question of federal

procedure, and state law cannot trump federal procedure. *See* Section VII below.

As in *Williams*, the Court should hold the complaint does not satisfy Article III, vacate settlement approval, and instruct the district court to correctly consider Rule 23(e)(2)(C), *Briseño*, and *Pearson*. 65 F.4th at 1261.

## Argument

## I. Plaintiffs lacked standing to bring their claims for injunctive relief and the district court lacked jurisdiction to adjudicate those claims.

"[A] plaintiff must demonstrate standing separately for each form of relief sought," something Plaintiffs here cannot do for the settlement's injunctive relief. *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023) (internal quotation omitted). This requires demonstrating (a) a *future* injury that is "concrete and particularized" and "actual or imminent"; (b) a "causal connection" between the harm and defendant's conduct; and (c) that the relief sought redresses the alleged harm. *Id.* at 1253-54 (emphasizing "future" injury for injunctive relief); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs' response brief fails to allege a future legal injury and reveals the injunctive relief their settlement negotiates does not redress the alleged harm. Accordingly, this Court must vacate and reverse.

*First*, as in *Williams*, *Lujan proves* that Plaintiffs' alleged future injury does not suffice. Plaintiffs claim they "are long time users of [J&J]'s sunscreen products [who] … want to purchase" these products "in the future." PB11. And "[i]n the future" they "intend to purchase" J&J's products at some unidentified time "when the Settlement's injunctive relief mandate takes effect." PB10. They make the same failed injury argument the Court dismissed in *Lujan*, where the plaintiffs "visited the areas of [new construction] projects" which threatened wildlife species that they "inten[ded] to return to … this time, [] deprived of the opportunity to observe animals." 504 U.S. at 564.

Such "some day intentions" cannot manifest a future legal injury, even if that "past exposure" resulted in harm. *Lujan*, 504 U.S. at 564. When will Plaintiffs buy J&J's sunscreen? Two plaintiffs pleaded they might *desire* to purchase these products if assured they're "unadulterated and meet the advertising claims." OB4. But how could even this hypothetical "desire" materialize when the settlement permits 1 ppm benzene—when Plaintiffs pleaded that benzene was unsafe at *any* level? OB7. How could plaintiffs find assurance when the settlement does not require testing of the finished product in any event?[3] Even if the

---

[3] Plaintiffs cite the final approval order (2 J.A. 178) to assert "injunctive relief…requires that Defendant modify its manufacturing practices to test for benzene…" PB11 n.5. But the district court simply summarized the settlement agreement, which merely requires testing until "two (2) years from the date of execution of this Class Action

impossible conditions could occur, when would an abstract desire materialize into a concrete plan? The record speaks to none of these questions. "Without any description of concrete plans, or indeed even any specification of when the some day will be," there is no injury. *Id.* Plaintiffs' brief inaccurately portrays Plaintiffs' intent to buy J&J's sunscreen again. Class Counsel writes, "as 'long time users of [J&J]'s products,' Plaintiffs have *imminent, concrete plans* 'to purchase [J&J]'s Sunscreen Products in the future' (emphasis added)." PB11 (quoting 1 J.A. 65). But counsel's editing gives away the game: what Plaintiffs alleged is that as "long time users of [J&J]'s Sunscreen Products, [] they *desire to purchase* [J&J]'s Sunscreen Products in the future." 1 J.A. at 65. Mere desires are not concrete plans. *Williams*, 65 F.4th at 1253; *see also Lujan*, 504 U.S. at 564. And presumably, this language is the best Plaintiffs have to establish injury. As Frank's opening brief highlights, the rest of Plaintiffs' alleged future harm is couched in conditional, rather than concrete, language. OBxiii-xv. Declaring "Plaintiffs have imminent, concrete plans" to buy J&J's products in the future does not make it so. PB11.

---

Settlement Agreement." 1 J.A. 114. In other words the requirement only persists until January 2023, which predates final approval! This renders testing a dead letter, as Frank observed and plaintiffs cannot dispute. OB7.

*Second*, Plaintiffs misread *Williams* and misapply it to this case. They observe that in *Williams* the "conjectured product" at issue "did not exist" and thus could not be purchased in the future, while here J&J's injurious sunscreen can be bought again without the settlement. PB11. But *Williams*'s holding—that plaintiffs lacked an injury because the product they wanted to buy did not exist—simply applied the law to that case's unique facts; its holding of the legal standard for concrete injury was not restricted to those facts. 65 F.4th at 1253-56. *Williams* "look[ed] no further" than *Lujan* to layout this Court's standard for proving a future concrete injury. 65 F.4th at 1254. Because *Lujan*'s "some day" standard addressed and denied a claimed injury that *was* possible but not concrete, so does *Williams*. 504 U.S. at 564.

*Third*, Plaintiffs' don't satisfy redress here either. *Lujan*, 504 U.S. at 561. The crux of the injunctive relief is to ensure Plaintiffs "receive the[] benefits" of J&J's sunscreen "without risking injuries from benzene exposure." PB10. But Plaintiffs themselves alleged that a product with *any* level of benzene is worthless to them. *E.g.*, 1 J.A. 64-65, 67. And they assert "[t]here is no safe level of benzene exposure, so it is unsuitable for human application as an ingredient in sunscreen." 1 J.A. 55. But the Settlement's injunctive relief expressly allows for the presence of some level of benzene. *See* 1 J.A. 114-15 (describing testing protocols to allow "one (1) part per million (PPM) benzene" in raw materials and finished goods testing). Plaintiffs' pleadings cannot be undone by appellate

revisionism. *See* PB11 (declaring plaintiffs' future intent to purchase once the products are no longer "adulterated with unsafe levels of benzene"); *cf. Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1150-51 (11th Cir. 1983) (concluding that reliance on counsel's representations rather than actual testimony ill suits class-action settlement proceedings). Thus "the requested [] injunctive relief would not redress [Plaintiffs'] purported injury" because—per their own allegations, 1 J.A. 55, 64-65, 67—so long as J&J's products contain *any* benzene they are still injurious and worthless. *Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, 773 F.3d 243, 247 (11th Cir. 2014).

*Finally*, Plaintiffs' attack on Frank's alternative standing argument—that Plaintiffs cannot represent purchasers of J&J's non-aerosol products—also fails. For one, Frank's argument against standing cannot be abandoned as Plaintiffs claim. *Contrast Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) ("standing cannot be waived or forfeited"); *and Williams*, 65 F.4th at 1254 (addressing standing even though appellant did not "raise[] this issue on appeal"), *with* PB12. And two, Plaintiffs' counsel represented below that the non-aerosol purchasers *are* materially different when they remarked these purchasers were—unlike the Named Plaintiffs—"consumers [who] received the product as advertised, labeled and bargained for." Pl. Mot. for Prelim. App., Dkt.55 at 30. They admit this distinction could have "prevented liability" by J&J, "undercut Plaintiffs' ability to satisfy …

ascertainability," and reduced the probability of class certification. Pl. Mot. for Prelim. App., Dkt.55 at 30. Such a difference is material, because "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (internal citation omitted). But there is no named plaintiff who satisfies this bar as to non-aerosol purchasers identified in the operative complaint.

For these reasons, Plaintiffs lack Article III standing and the settlement approval must be reversed.[4]

---

[4] Plaintiffs argue (PB11-13) Frank forfeited his challenge to Plaintiffs' standing to bring claims for prospective injunctive relief by not raising them below, while also challenging his standing for the first time on appeal. (*See* Section V below.) As noted, jurisdictional arguments cannot be forfeited, but, while it is irrelevant, Plaintiffs are also wrong on the facts as well as the law. Frank did notify the district court that Plaintiffs' complaint had "jurisdictional defects" and failed to establish Article III standing, and proposed that the district court make findings on the question; the court erred when it failed to do so. Frank's Proposed Findings of Fact and Conclusions of Law, 2 J.A. 141-42 at ¶ 11. And Frank's standing argument is based on *Williams*, an intervening decision from this Court, which addressed class member standing to bring prospective injunctive relief for the first time in this circuit. *Beazer E., Inc. v. Mead Corp.*, 525 F.3d 255, 263 (3d Cir. 2008) ("An exception to … waiver rules is recognized when an intervening decision from a superior court changes the controlling law.").

## II. The district court's failure to properly analyze the settlement under Rule 23(e)(2)(C) requires reversal of the settlement approval.

The district court committed reversible error when it applied the wrong legal standard to settlement approval and ignored a number of Rule 23(e)(2)(C) factors, wrongly conflating portions of the *Bennett* analysis with what is required under Rule 23(e)(2)(C)(ii) and (iii). OB31-36; *cf. In re Equifax Data Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (reiterating that courts must consider a settlement under Rule 23(e)(2)(C) and "*several additional factors* called the *Bennett* factors*" (emphasis added)). Plaintiffs assert (PB22-23) Frank is factually incorrect on this point but do not explain where or how the court conducted its required Rule 23(e)(2)(C)(ii) and (iii) analysis. Instead, they claim that the approval order "shows that the [c]ourt was cognizant of its duty to ensure there was no self-dealing," and that the court repeatedly found the settlement resulted from arm's-length negotiation. *Id.*

But this simply repeats the district court's error. Whether the settlement resulted from arm's-length negotiation is a question for Rule 23(e)(2)(B), not (C). Satisfying one doesn't satisfy the other. OB33-34; *Briseño*, 998 F.3d at 1030 (quoting *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 n.12 (9th Cir. 2019)). The district court failed to examine the question of self-dealing, which requires no collusion. OB24-25 (citing cases). Frank noted (OB31-32) that the district court merely "announced that it must consider the Rule 23(e)(2)(C) factors

before retreating into two paragraphs of 'analysis'" respecting *Bennett* considerations on the stage of the proceedings and the amount of discovery completed. But as this Court holds, the district court had an obligation to "consider the impact of Congress' 2018 amendments to Rule 23(e)(2)(C) on its analysis of the fairness of a class-action settlement, including 'the effectiveness' of the settlement's 'method of distributing relief to the class,'" under Rule 23(e)(2)(C)(ii), "and whether the proposed attorneys' fees are disproportionately large compared to the amount of relief reasonably expected to be provided to the class" under Rule 23(e)(2)(C)(iii) and *Briseño*. *Williams*, 65 F.4th at 1261; *accord Moses v. N.Y. Times Co.*, 79 F.4th 235, 2023 U.S. App. LEXIS 21530, at *14-*16 (2d Cir. 2023). Reviewing these components of class settlements "in tandem" serves as a "backstop" to prevent the exact sort "unscrupulous" self-dealing found here. *Moses*, 2023 U.S. App. LEXIS 21530, at *15 (internal quotations and citations omitted).

While Rule 23 requires class counsel to conduct arm's length settlement negotiations, that procedural requirement comes from the text of Rule 23(e)(2)(B). Rule 23(e)(2)(C) carries a distinct substantive requirement to suss out self-dealing results such as the settlement here. *See* Notes of Advisory Committee on 2018 Amendments to Rule 23 (distinguishing the "procedural concerns" of subparagraphs (A) and (B) from the "substantive review" of subparagraphs (C) and (D)). Reading (e)(2)(C) to merely replicate (e)(2)(B) would violate the "cardinal

principle" that no rule should be construed to render a "clause, sentence, or word" "superfluous, void, or insignificant." *RW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *accord Nat'l Ass'n of Home Builders v. Defs. of Wildlife,* 551 U.S. 644, 669 (2007) ("[W]e have cautioned against reading a text in a way that makes part of it redundant."); Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012) ("every word and every provision is to be given effect").

And reading (e)(2)(C) as duplicative makes no sense anyway. A finding that negotiations were conducted at arm's length cannot be substituted for an inquiry into potential self-dealing under Rule 23(e)(2)(C)(ii) and (iii) because a defendant "operates as no brake against the invidious effects of [the] conflict of interest" between class counsel and class members. *Piambino v. Bailey*, 757 F.2d 1112, 1143 (11th Cir. 1985); *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014) ("naïve" to rely on "arm's-length negotiations by experienced counsel"); *Kim v. Allison*, 8 F.4th 1170 (9th Cir. 2021) ("deference to the mediation proceedings" is an "abdicat[ion]" of the independent judicial duty); *Roes*, 944 F.3d at 1050 n.13 (citing cases).

On top of the upside-down distribution of the settlement proceeds, the settlement contains a clear-sailing agreement and a segregated fund for attorney's fees, all of which are convincing indications of self-dealing and a lawyer-driven settlement. OB33; *Briseño*, 998 F.3d at 1026-27. The settlement order must be reversed on these grounds because "[h]ad the

lower court conducted the correct analysis and correctly valued the settlement, it would not have approved the settlement given the self-dealing it contained." OB32 (citing *Williams*, 65 F.4th at 1261); *see also Arkin v. Pressman*, 38 F.4th 1001, 1012 (11th Cir. 2022) (settlements may not "subordinate[] the interests of the class" or "sell[] out the class for attorneys' fees").

## III. The settlement approval cannot stand because class counsel takes $2.6 million for themselves while providing less than $1 million in coupon relief for class members.

The settlement approved below distributes coupons with a nominal value of $1.75 million but that are likely to provide less than a million dollars to class members. Although Plaintiffs claim (PB14-22) the refund extension and prospective injunctive relief provide other value, neither confers any benefit to class members. OB37-47. When measured against class counsel's $2.6 million Rule 23(h) award, such meager class compensation makes the settlement's upside-down distribution impermissible under Rule 23(e)(2). It should never have been approved. That the approval order failed to properly value the settlement or respond to Frank's arguments on these points provides independent reason to reverse the settlement approval.

**A.    The approval order errs by failing to determine the settlement value.**

A district court's settlement value "must allow meaningful review" by an appellate court, meaning "the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1088-89 (11th Cir. 2019); *accord Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1261 (11th Cir. 2020). As Frank noted (OB35), Plaintiffs first argued below that the total settlement value was less than $5 million before later telling the court it was an $80 million settlement. But the district court settled on neither number—nor any stated number. Instead, the only thing approaching a valuation in the approval order is the court's statement that Plaintiffs' $2.5 million fee request "represent[s] approximately one-third of the common fund." 2 J.A. 199. Drawing the mathematical inference, that would represent a common fund valuation of around $7.5 million. But how did the court derive $7.5 million? What comprises the value? Given the court's failure to "articulate" or "give principled reasons for" its decision, or "show its calculation," no one can say. *Home Depot*, 931 F.3d 1088-89. Moreover, no legally valid calculation could have arrived at this number, or any value north of the $1.75 million nominal value of the coupons.

Plaintiffs' six-page, meandering response (PB29-34) on this issue is important for what it does not provide: any specific valuation of the

settlement. They say (PB29) the court's valuation is supported by the record because the court articulated at the fairness hearing that the settlement contained "three buckets of recovery," to include the coupon relief, valued at $1.75 million, the refunds, amounting to around $10 million, and the injunctive relief, argued to be worth $70 million. But expanding the quoted portion of the transcript, the court was merely outlining arguments put forth by the settling parties: "looking at the filings I have, it *seems* like there are three baskets of recovery…" 2 J.A. 87 (emphasis added). These are not factual findings as the Plaintiffs represent. Even if they were, it is the ultimate "written order that controls in civil cases." *Equifax*, 999 F.3d at 1269 n.16 Plaintiffs don't even try to reconcile the $7.5 million valuation in that order with the "three buckets" approach at the hearing. Ultimately, neither at the hearing nor in its order did the court commit to any specific values for the separate components of settlement relief.

All we know from the record is what the settling parties argued for and the $7.5 million number the court arrived at. And the two numbers are irreconcilable. We still do not have the answer to the question of *how* the court valued each form of relief, or even if it calculated their values at all. This impermissible opacity makes it impossible for the appellate court to provide meaningful review.

Doubling down, Plaintiffs criticize (PB34 n.11) Frank for saying the order's valuation was hard to decipher. Confusingly, they say the "record

makes clear that the District Court did *not* include the $70 million nonmonetary relief obtained and the vouchers." PB34 n.11. Leaving aside their contradiction with the supposed "three buckets" understanding of settlement valuation, Plaintiffs fail to provide the record cites that supposedly make this exclusion clear. In reality, the court indicated at several points in its order that it *was* including the value of the injunctive relief. *See* 2 J.A. 195 (finding the injunctive relief should be credited to the settlement); 2 J.A. 196 (crediting injunctive relief to settlement); 2 J.A. 198 ("the value of the non-monetary/injunctive relief obtained on behalf of the Class" was included in the court's fee determination); 2 J.A. 200 (justifying fee award in part with "the significant value of the changed business practices adopted by [J&J]"). But nowhere did the court say how that "value" entered the fee equation, nor what that "value" was.

Plaintiffs, like Frank, cannot discern the court's valuation method. Because Frank, the settling parties, and this Court can only speculate on the matter, the approval order should at minimum be reversed and remanded with instructions to the district court to elaborate on its valuation. But even if the district court had articulated its valuationa review of the various forms of purported settlement relief shows that $7.5 million could be reached only through legal error.

**B.    The potential value of the settlement cannot exceed—and is certainly less than—$1.75 million because only the coupon "bucket" is meaningful settlement consideration.**

Nominally, the settlement claims three general categories of relief: coupons with a maximum aggregate value of $1.75 million; close to $10 million in refunds that J&J had paid before the settlement; and prospective injunctive relief consisting of revised raw materials and finished product testing standards that Plaintiffs assert provide $70 million in value. But "[c]ases are better decided on reality than on fiction." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (internal quotation omitted). In reality, as discussed below, the preexisting refunds and the prospective injunctive relief cannot be legally credited to the settlement, leaving only the coupon relief. OB37-47.

**1.    The coupons are not worth $1.75 million to the class.**

According to the settlement, the coupons have a maximum aggregate value of $1.75 million. 1 J.A. 117. In reality, class members are unlikely to redeem more than $1 million worth, and likely much less than that figure. OB37. And the settling parties proffered no evidence to support an expectation of a higher-than-normal redemption rate. OB36. Without that evidence, for purposes of Rule 23(e) assessment, a proper valuation of the coupon relief would be value of less than a million dollars given historical redemption rates of 1-4%. 2 J.A. 23-24 (citing

authorities). For purposes of a Rule 23(h) fee award, the proper valuation is the actual redemption rate. OB47-49; section IV below; 28 U.S.C. §§ 1712(a), (c).

### 2. The refund program is not a settlement benefit.

The refund program is not a benefit to class members that can be credited to the settlement because it predated the settlement, was voluntarily undertaken by J&J, and concluded before class notice. Plaintiffs' mischaracterize (PB22) Frank's argument here as stating there is no causal connection between the initiation of the lawsuit and J&J's voluntary recall and refund program, which the court seemingly credited the settlement for precipitating. But Frank's overarching point (OB38) is that it is legally irrelevant whether J&J undertook the actions because of Plaintiffs' complaint. Rule 23 requires consideration for the release of the class's claims. *Koby v. ARS Nat'l Serv., Inc.*, 846 F.3d 1071 (9th Cir. 2017). It is "the incremental benefits" from the settlement that count, "not the total benefits" from the litigation. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002). The refund cannot be consideration for resolving class member claims because J&J voluntarily undertook it before settlement negotiations even began—and because the refund period *expired before the notice period*. No class member who learned of the settlement through notice would have been able to avail him or herself of the refund relief. Thus, even if the refund program were

somehow conceived of as settlement relief, it could not support settlement approval because the class notice failed in its basic function—informing class members how to avail themselves of settlement benefits. Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, § 21.312 (4th ed. 2008).

Plaintiffs' reliance (PB30-31) on the unpublished *Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015), is unavailing. That decision predates both the 2018 Amendments and *Williams*; it is also distinguishable. In *Poertner*, "[t]he record … ma[de] clear" that defendant's decision to undertake the actions subject to the injunctive relief "was motivated by the present litigation." 618 F. App'x at 629. By contrast, the only record evidence on the recall and refund here, in the form of J&J's concession at the fairness hearing that the actions were voluntary, points in the opposite direction:

> Johnson & Johnson Consumer took corrective action in recalling those products from the marketplace, announcing that very thoroughly in the month of July, and then voluntarily offering refunds to all the consumers who had purchased those products and were instructed to discard them.

2 J.A. 100-01.

Likewise, Plaintiffs' attempt to distinguish *Koby* fails. They read (PB21) *Koby* to have turned on the fact that the injunctive relief measures were voluntarily undertaken years prior, while the refund here was

implemented after they filed suit. But contrary to Plaintiffs, the dubious relief the *Koby* defendant provided also occurred after "Plaintiffs filed suit" (PB21) and indeed after the *Koby* plaintiffs survived a contested motion to dismiss. 846 F.3d at 1073, 1080. Plaintiffs have much *less* cause to claim catalyzing credit for defendant's voluntary changes than the *Koby* plaintiffs, but the plaintiff in *Koby* could not attribute settlement value to voluntary actions the defendant took *after* litigation was instigated against it. 846 F.3d at 1074-75. That the *Koby* defendant undertook conduct "years" before settlement did not bear on the relevant fact that the injunction did "not obligate" defendant "to do anything it was not already doing." *Id.* at 1080. If the injunction does not create *new* value for class members, which they would not otherwise have without the settlement, it cannot be consideration for the release of their claims. *Koby* stands for *this* proposition. Just as the injunction in *Koby* provided no new value to class members independent of defendant's voluntary actions, the refund here "gave absent class members nothing of value" versus if the parties never reached settlement or had the district court rejected the settlement. *Id.* So they cannot "fairly or reasonably be required to give up [their claims] in return." *Id.* A paper promise memorializing J&J's already-concluded recall program provides no new value to class members. *Cf. Dry Max Pampers*, 724 F.3d at 719 (refusing to credit the reinstatement of defendant's voluntary refund program).

The district court committed reversible error both in failing to acknowledge Frank's argument about *Koby* and failing to follow *Koby*.

> ### 3. The putative prospective injunctive relief provides no settlement benefit because it is not consideration for the release of monetary damages claims.

As discussed in Section I, Plaintiffs represent past purchasers of J&J sunscreen and thus lack Article III standing to bring claims for prospective injunctive relief. *Williams*, 65 F.4th at 1253. But even if they had standing to seek prospective injunctive relief, the injunction here, which largely consists of revised raw materials and finished goods testing standards, provides no value (much less the claimed $70 million) to the class.

"Future purchasers are not members of the class, defined as it is as consumers who have purchased" J&J sunscreen. OB42; *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014). "The fairness of the settlement must be evaluated primarily based on how it *compensates class* members—not on whether it provides relief to other people." *Dry Max Pampers*, 724 F.3d at 720 (internal quotations omitted). The future conduct of J&J bears no relevance to class members who seek redress for alleged economic injury. In response, Plaintiffs collect (PB14-15) a handful of mostly district court cases for the general proposition that injunctive relief can provide value to a class. Frank does not disagree.

Prospective injunctive relief *may* confer benefit on a class, but only when it is targeted to the class members, rather than the world at large as the settlement here. OB42; Erin L. Sheley & Theodore H. Frank, *Prospective Injunctive Relief and Class Settlements*, 39 HARV. J. L. & PUB. POL'Y 769, 778-80 (2016).

An agreement to do something that provides no value to the class does not magically confer benefit through enforceability. "Zero plus zero equals zero." *In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551, 557 (7th Cir. 2017). Thus, Class Counsel's argument (PB15) that including the injunction in a binding and enforceable settlement benefits "long time customers" of J&J products proves nothing. Perhaps J&J cannot now return to its old testing standards, but so what? Plaintiffs are *past purchasers*—they are not benefiting from the future conduct of J&J any more than non-class members.

On this point, Plaintiffs now assert (PB16) that past purchasers are indeed future purchasers. But they fail to provide such evidence for the implausible claim that every past purchaser is a future purchaser, and the record remains devoid of any suggestion as to the sunscreen purchasing habits of class members. *See Holmes*, 706 F.2d at 1151 ("in view of the complexity which obviously attends settlement issues, it is wise in most cases to rely upon proven facts, particularly economic facts," rather than mere attorney opinion). Instead, Plaintiffs shift to say (PB16) it is sufficient that they alleged named class members would buy J&J

sunscreen again if the court enjoined the company as they asked. But as noted in section I, above, Plaintiffs alleged nothing of the sort. They instead alleged a highly conditional scenario under which named class members *might* buy J&J sunscreen again *if* they could be guaranteed there was not even a *risk* that the products contain sunscreen. *See*, *e.g.*, OB5; 1 J.A. 65-66. But the very injunctive relief they sought still allows for some level of benzene. Therefore, there remains a very real *risk* that J&J sunscreen products will contain some benzene and the named plaintiffs will not buy J&J sunscreen again even under the settlement's restrictions on J&J. So just as Plaintiffs' allegations cannot confer standing on them, they cannot evidence any *likelihood* that the named plaintiffs—or any class member—is a future purchasers of J&J sunscreen. Despite what Plaintiffs say (PB16), Frank is not the one who must prove class members are not repeat purchasers. That is Plaintiffs' duty because they "bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted). Not to mention the burden of showing Article III standing.

Even if the prospective injunctive relief provided value, it cannot be measured by the cost to J&J to provide it. As Frank noted (OB37), J&J acknowledged that the $70 million dollar valuation expenditures were voluntary and represented "hard costs" to J&J for implementing the

injunctive relief. 2 J.A. 102. But the cost to J&J of implementing any changes is a business cost and not equivalent to the relief derived by the class from those actions. OB42-43; *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011). Rule 23(e) is not concerned with "how much money" J&J spent "on purported benefits," it looks solely at "the value of those benefits to the class." *Bluetooth*, 654 F.3d at 944.

Frank made these arguments to the district court, which summarily dismissed them by asserting no evidence supported the notion that the injunction did not result from the litigation. So the approval order explicitly credited the value of the injunctive relief (*e.g.*, 2 J.A. 200) yet failed to quantify this relief in the $7.5 million calculation. In a case such as this where the class members receive non-monetary relief but class counsel score a large cash payday, courts abuse their discretion by not "at least attempt[ing]" to value the injunctive relief "and use that valuation in an assessment of disproportionality." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1126 (9th Cir. 2020); *Briseño*, 998 F.3d at 1028 (abuse of discretion to not quantify and explain the value of injunctive relief or exclude it from calculations).

## C. The approval order failed to provide a reasoned response to Frank's objections.

The district court failed to provide a reasoned response to several of Frank's objections and remand is required for that reason independent of the approval order's other failings. This Circuit squarely requires a

district court approving a settlement over objections to provide a "reasoned response" to the objections. *Johnson*, 975 F.3d at 1262. A reasoned response to an objection "includ[es] findings of fact and conclusions of law necessary to support the response." *Id.* (internal citation and quotation omitted). "The level of specificity required" of a district court's reasoned response "is proportional to the specificity" of the objections. *Home Depot*, 931 F.3d at 1089. Most glaringly, the district court failed to respond to Frank's thorough arguments, citing appellate precedent, that Rule 23(e)(2)(C) precluded approval of the settlement— failing to properly analyze the settlement under the Rule at all—and his arguments that CAFA applied to the settlement—not even mentioning the statute in the approval order a single time.

Plaintiffs disagree but they cannot mitigate the approval order's failings. For instance, Plaintiffs' reliance (PB24-25) on *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429 (11th Cir. 2012), for the proposition that the district court is not "required to detail all of the reasons for its conclusions," is inapt. *Nelson* is an unpublished decision that pre-dates *Johnson*. It does not bind this Court and did not have the benefit of *Johnson*'s rule.

Plaintiffs next argue (PB25) that the length (30 pages) of the approval order and the record as a whole show the district court gave "meaningful consideration to Frank's objections and gave a reasoned response to those objections." But the very foundation of Frank's

objection was that the settlement flunked Rule 23(e)(2)(C) (2 J.A. 21-28); the settlement's value was inflated by illusory injunctive relief (2 J.A. 24-26); and that the claimed "vouchers" were "coupons" under CAFA, subjecting the settlement to that statute's strictures (2 J.A. 20-21). The district court's order does not analyze Rule 23(e)(2)(C). It provides no explanation how it arrived at a valuation of $7.5 million for the settlement, including what portions of relief it was evaluating and how each was valued individually. Indeed, the court never even used the figure of $7.5 million. Frank had to reverse engineer the valuation from the court's statement that the $2.5 million fee request was a third of the fund value. OB35-36. Finally, the opinion does not analyze CAFA; neither "CAFA" nor 28 U.S.C. § 1712 appears in the order a single time.

Plaintiffs try to redefine the requirements of Rule 23(e)(2)(C) to conform to the parts of Rule 23(e) the settlement order *did* analyze. As for Rule 23(e)(2)(C)(ii), Plaintiffs say (PB26-27) the district court found their notice program was proper and thus rightly did not punish them for their poor claims rate. But those findings were not contained in the section of the approval order even nominally interpreting the Rule 23(e)(2)(C)(ii).

In any event, the notice program is not what courts assess under that subsection. *See Briseño*, 998 F.3d at 1024; *Moses*, 2023 U.S. App. LEXIS 21530, *14-15 (explaining the *substantive fairness* requirements of Rule 23(e)(2)(C)(ii)-(iii)). Rule 23(e)(2)(C)(ii) requires a settlement's

distribution be judged by its "effectiveness." This is an *objective* standard—did the parties succeed in getting money to the class?—that a court can only measure using what the class actually receives. It is irrelevant if the court subjectively thought that the parties did a really good job with notice. There is no "at least you tried" exception to Rule 23(e)(2)(C)(ii). What matters under the rule's text is results: the "effectiveness." (And even subjectively, the parties can't be said to have even *tried* to reach proportionality for the release of damages claims, Even if the coupons would have a 100% redemption rate, the face value of the coupons would be less than the attorneys' fees; and the settlement on its face closed the rebate program before the class even received notice.)

As for Rule 23(e)(2)(C)(iii), Plaintiffs assert (PB27) the district court "found that the effectiveness of the proposed method of distribution was fair" because it "'offers all Class Members the same relief—a refund for Aerosol Products purchased and a voucher for Non-Aerosol Products purchased." Again, Plaintiffs cite to unrelated findings, which anyhow do not demonstrate what the Rule requires. The quoted language came from the court's Rule 23(e)(2)(B) analysis that the settlement resulted from arm's-length negotiation.[5] The proper analysis under "the new

---

[5] This appeal does not challenge the court's Rule 23(e)(2)(B) analysis. Nor does it raise an issue with Rule 23(e)(2)(D), which seems to be the more relevant subsection for analyzing whether the settlement

Rule 23(e)" would "balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." *McKinney-Drobnis*, 16 F.4th at 607 (internal quotation marks omitted). But that is not what the district court did.

On Frank's argument that the fee award is disproportionately large, Plaintiffs claim (PB28) the order spent three pages analyzing the issue but only cite to the court's conclusory statements that the fee award represented one-third of the settlement and conformed to Eleventh Circuit case law. They attempt (PB28-29) to buttress the court's conclusions by noting it voluntarily undertook a lodestar crosscheck. Conclusory statements are by definition not reasoned responses to Frank's exhaustive arguments. And conducting a Rule 23(h) lodestar cross-check does not control the 23(e)(2)(C)(iii) analysis. *Briseño*, 998 F.3d at 1026 (reversing that very error). Frank is entitled to know the district court's reasoning in rejecting his arguments. "The law is what the law is, and the law requires more than a rubber-stamp signoff." *Johnson*, 975 F.3d at 1263.

---

treats class members fairly in relation to one another. But it bears mentioning that the court's reasoning collapses in on itself. The court concludes that all class members in the single settlement class receive the same form of relief even as it acknowledges that the form of relief depends on which product a class member purchased. The non sequitur is obvious.

In sum, "[t]he district court's final order approving the settlement agreement falls far short of what [this Court's] precedents require" and it must be reversed. *Johnson*, 975 F.3d at 1263.

## IV. The "vouchers" are coupons and the district court's failure to analyze them as such dooms the settlement and fee approval under 28 U.S.C. §1712.

The settlement offers $1.75 million in nominal relief to non-aerosol purchasers in the form of "vouchers"—*i.e.*, coupons. The Class Action Fairness Act requires courts evaluating a settlement that "provides for a recovery of coupons" to value the settlement—or portion of the settlement attributable to the coupon relief—according to the redemption value of the coupons. 28 U.S.C. §§ 1712(a), (c). But even though the district court acknowledged that coupons made up a portion of the settlement's relief in its approval order (2 J.A. 173), and at the fairness hearing (2 J.A. 87, 127), the order lacked any discussion or analysis or application of § 1712. The failure to follow the plain language of the statute requires reversal; even under the Ninth Circuit's atextual approach to CAFA, the failure to analyze whether the "vouchers" are coupons requires reversal. *In re Easysaver Rewards Litig.*, 906 F.3d 747, 756 (9th Cir. 2018).

### A. CAFA mandates courts analyze whether a settlement contains coupon relief.

Plaintiffs do not dispute (PB35-37) that the court failed to analyze the "vouchers" to determine whether they are coupons subjecting the

settlement and fee award approval to CAFA. And that concludes the matter. In failing to apply the correct legal rule, the district court abused its discretion, and the settlement approval must be reversed. *Williams*, 65 F.4th at 1251; *accord Easysaver*, 906 F.3d at 756. Plaintiffs do disagree with that conclusion, however, arguing (PB35) that the failure to investigate the coupon relief was immaterial since it "concluded that the fee and cost award was reasonable without attributing *any value* to the vouchers."

But not only is that inaccurate; it sidesteps the question. *First*, to the extent that Plaintiffs mean to say that the approval order failed to determine the actual monetary value of the coupon relief, Frank agrees. It never told us if the court valued the coupons at the $1.75 million face value, zero dollars, or something in between.

*Second*, the approval order did, in fact, attribute value to the coupon relief, it just failed to quantify that value, as it must. For instance, the district court expressly considered the coupon relief as a valuable part of the "100% recovery" achieved by the settlement. 2 J.A. 196. (97% of class members receive nothing from the settlement, so the "100% recovery" language by itself suggests clear error.)And specific to the fee request, the approval order noted "[t]he requested fee award is inclusive" of the "value of the non-monetary/injunctive relief obtained," presumably to include the non-monetary coupon relief. 2 J.A. 198. Plaintiffs even argue against themselves on this point by stating (PB34) elsewhere in their

brief that the district court found the fee request reasonable based on a calculation that only included the "voucher recovery and refund checks." Plaintiffs' brief itself proves that the district court's order does not allow for meaningful, intelligible review.

*Lastly*, the court was not free to simply hold the coupons to the side and calculate the appropriateness of the fee award without them when they are otherwise a part of the settlement. When a settlement includes coupons, "[a] value must be attached to the relief obtained by the class as part of the determination of an appropriate attorneys' fee for class counsel." *Redman v. Radioshack Corp.*, 768 F.3d 622, 635 (7th Cir. 2014). At least for approving the settlement, a "rough estimate" may have been permissible, but the approval order must have provided *something*. *Id.*

Given Plaintiffs' arguments on appeal, Frank now appears to be the only party arguing the coupons have any value at all. Indeed, in reality, they are the *only* form of actual class relief attributable to the settlement. *E.g.*, OB30-31, OB36. But Plaintiffs misunderstand (PB35) Frank's arguments about the mandatory application of §1712 as "attempts to claw away" the coupon relief. Frank never sought to have the coupon relief eliminated but only argues that it is significantly overvalued by the settlement papers and its inclusion as a form of relief in the settlement triggers certain obligations on behalf of Plaintiffs and the district court in calculating attorney's fees. Those obligations were not upheld and the settlement approval must be reversed as a result.

**B.    The "vouchers" are coupons subject to CAFA under any analysis.**

The district court did not undertake any CAFA analysis and that is sufficient error to justify reversal of the settlement award. But even putting that aside, the "vouchers" are coupons as a matter of law. (Indeed, the court called the vouchers "coupon awards." 2 J.A. 173.) And that result is the same whether a court correctly uses the ordinary meaning of the term "coupon," or instead uses something like some circuits' multi-factor tests. OB47-49; *cf. Moses*, 2023 U.S. App. LEXIS 21530, *27-28.

Unsurprisingly, Plaintiffs disagree. They argue (PB35-36) that a "coupon" merely provides a discount on a product, but a "voucher" does not. That is both factually wrong as it relates to the coupons here and legally wrong because no such distinction exists in the English language or appellate precedent. It is factually wrong because the coupons here have an individual value of around $5. *See*, *e.g.*, 2 J.A. 12 n.1. And as the undisputed declaration of Frank's counsel stated, his review of even the 25% discounted *sale prices* of (the upscale) Neutrogeena and Aveeno sunscreen products yielded zero items that could be bought for $5. 2 J.A. 78-79; *compare* PB36 (stating dozens of Neutrogeena *skin care products* cost around $10). In other words, the coupons cannot be redeemed for any whole product and instead offer a discount on J&J sunscreen products. So even if Plaintiffs' suspect "discount" distinction were real, it is inapplicable here.

Plaintiffs' "discount" distinction is legally wrong because dictionary definitions of "coupon" include those redeemable for a either a discount or an entire free product, as multiple appellate courts have found. For instance, the Second Circuit recently addressed this issue in *Moses*. The *Moses* Court looked to multiple dictionaries and found "[a] coupon is generally defined as an item that entitles its user to free or discounted products or services." *Moses* 2023 U.S. App. LEXIS 21530, *23-25 (citing "coupon" definition in New Oxford American Dictionary and Merriam-Webster's Third New International Dictionary). And the Seventh Circuit has similarly "rejected … for purposes of § 1712, a proposed distinction between 'vouchers' (good for an entire product) and 'coupons' (good for price discounts)." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 706 (7th Cir. 2015). Judge Posner has articulated the foolishness of Plaintiffs' argument well:

> They say that a coupon that can be used to buy an entire product, and not just to provide a discount, is a voucher, not a coupon. "Voucher" is indeed the term used in the settlement agreement, because the parties didn't want to subject themselves to the coupon provisions of the Class Action Fairness Act. But the idea that a coupon is not a coupon if it can ever be used to buy an entire product doesn't make any sense, certainly in terms of the Act. Why would it make a difference, so far as the suspicion of coupon settlements that animates the Act's coupon provisions is concerned, that the proposed $10 coupon could be used either to reduce by $10 the cash

> price of an item priced at more than $10, or to buy the
> entire item if its price were $10 or less?

*Redman*, 768 F.3d at 635.

The Court should apply the same plain-meaning definition of "coupon" used by the Second and Seventh Circuits to the coupons here.

Still, even applying the atextual, multi-factor test of the Ninth Circuit, the result is the same. In the Ninth Circuit, courts consider three guiding factors in determining whether "vouchers" or other forms of non-monetary credits resulting from a settlement are coupons under CAFA: "(1) whether class members have to hand over more of their own money before they can take advantage of a credit; (2) whether the credit is valid only for select products or services; and (3) how much flexibility the credit provides, including whether it expires or is freely." *McKinney-Drobnis*, 16 F.4th at 602 (internal quotations omitted). Applying those factors, the "vouchers" here are coupons.

As in *McKinney-Drobnis*, the coupons here might "require class members 'to hand over more of their own money before they can take advantage of' those benefits[.]" 16 F.4th at 604. As noted above, the coupons are worth $5 and there are no J&J sunscreen products for sale at that price. A $5 voucher "is not enough to purchase" J&J's sunscreen offerings and class members thus cannot replace "the [product] that class members were allegedly injured by—without spending their own money."

*Id.* at 604. The first factor weighs towards finding the "vouchers" are coupons.

Similarly, class members can use the "vouchers" only for products "under the same umbrella category of" skincare, hair care, and cosmetics. And the number of available products "pale[s] in comparison to the millions of low-cost products" that the Ninth Circuit cited when holding that gift cards are not coupons under CAFA. *Id.* at 605. Indeed, the type of products that can be obtained with a "voucher" here is even more limited than the "251 different products" available in *McKinney-Drobnis*, where the court still found the "vouchers" there were coupons. *Id.* The second factor also weighs towards finding the "vouchers" are coupons.

*Lastly*, as in *McKinney-Drobnis*, class members cannot elect cash instead of a coupon. *Compare* 16 F.4th at 599-600 *with* 2 J.A. 116-17. The coupons contain an expiration date of one year and are thereby no more flexible than the coupons found to be coupons in *McKinney-Drobnis*. *Compare* 16 F.4th at 605 *with* 2 J.A. 116-17. The vouchers are transferable and can be aggregated, but that was also true in *McKinney-Drobnis*. *Compare* 16 F.4th at 605 *with* 2 J.A. 116-17. The final factor is indeterminate, but on balance the Ninth Circuit's test would find the "vouchers" here are coupons based on the first two factors. *See also EasySaver*, 906 F.3d at 757 ("credits" were coupons even though they were freely transferable and claimants could claim an additional cash option).

In short, under the Ninth Circuit's test, the vouchers expire, can be used only for a narrow range of Aveeno- and Neutrogena-branded items, and fall within any meaning of "coupon" under CAFA. Plaintiffs' assertion (PB35) that the vouchers are not a "discount" is frivolous. Thus CAFA applies to the settlement and any attorneys' fees must be based on the actual redemption value of coupons redeemed.

The coupon test in *McKinney-Drobnis* is wrong: its legislated three-factor test is divorced from the text of the statute and the ordinary meaning of coupon, and its lack of a bright-line rule multiplies litigation because of the unpredictability of how courts will apply the vague test. But even under *McKinney-Drobnis*, the instruments here are subject to 28 U.S.C. § 1712.

The approval order's conclusory "finding" that the coupons "are transferable, may be aggregated, and expire not less than twelve (12) months from their date of issuance," (2 J.A. 177), is simply reciting the terms of the settlement, and cannot be credited as analysis of the coupon relief as it fails to provide a "reasoned response" to Frank's objection and extensive argument on this substantial issue. *Johnson*, 975 F.3d at 1262 (reasoned response to "objections includ[es] findings of fact ***and conclusions of law*** necessary to support the response." (emphasis added) (quoting *Cotton v. Hilton*, 559 F.2d 1326, 1331 (5th Cir. 1977))); *see also Home Depot*, 931 F.3d at 1089 (explaining that "[t]he level of specificity required by district courts is proportional to the specificity of

the fee opponent's objections"). The settlement fails Rules 23(e)(2)(C) for the reasons discussed above, and the district court facially erred by failing to apply 28 U.S.C. § 1712. But at a minimum, this Court should "remand to the district court for a fuller explanation" of its CAFA analysis. *Johnson*, 975 F.3d at 1263.

## V.   The district court abused its discretion by relying on facts common to all class-action settlements and thus irrelevant to settlement fairness.

Frank noted that the district court abused its discretion and committed errors of law when it impermissibly relied on irrelevant facts that bear no or little weight on whether a class-action settlement satisfies Rule 23(e). OB50-53. Frank listed three such errors; plaintiffs pretend to defend one, forfeiting any claim that the other two mistakes were not reversible error.

But even the error plaintiffs defend is a strawman. Frank complained that the district court misapplied the *Bennett* factor of "*substance* and amount of opposition to the settlement" (emphasis added) by (1) focusing solely on the amount of objections without also considering their substance and (2) overweighting this misapplication of one factor as "nearly dispositive" while ignoring other Rule 23(e)(2)(C) factors. OB50-51. Plaintiffs' defense (relying largely on other district courts that make the same error at behest of *ex parte* presentation of settlement approval motions) simply repeats the district court's error by focusing on

the "amount" without mentioning the words "substance" or "nearly dispositive" once.

As Frank argued, *all* consumer settlements will have a low number of objections and opt-outs, and Plaintiffs do not dispute this or argue that *Redman* is incorrect. If the *Bennett* factor is solely about the *amount* of objections and a successful nonprofit's substantive objection does not count, the factor is meaningless because it does nothing to distinguish good settlements from bad ones. Fortunately, that is not what *Bennett* says. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The district court committed reversible error.

## VI.    Frank has standing.

Frank was a consumer purchaser of both aerosol and non-aerosol J&J sunscreen products. 2 J.A. 36. He purchased both forms of sunscreen during the class period and is therefore a class member bound by the settlement. *Id.*; 1 J.A. 108 (defining "Class" to include individuals who made purchases during the time Frank bought J&J sunscreens). Frank's "status as a member of the class who is bound by the district court's judgment is itself enough to provide him … with standing to appeal the district court's approval of a class-wide settlement over his … objection." *Williams*, 65 F.4th at 1252 (citations omitted).

Still, Plaintiffs argue (PB6, 9) Frank "manufactured" his standing because "he purchased his Neutrogeena non-aerosol sunscreen *after*

[Plaintiffs'] class action lawsuit was filed in May 2021 and *after* [J&J's] widely publicized nationwide recall was announced on July 14, 2021." The *post hoc ergo propter hoc* argument is frivolous on multiple grounds.

Yes, "[q]uestions of the litigants' standing may be raised at any time," *Williams*, 65 F.4th at 1251 (internal citation omitted), so the fact that Plaintiffs are raising Frank's standing for the first time on appeal without challenging it below does not preclude the Court from considering Frank's standing. But what plaintiffs *cannot* do is premise the argument on speculative subjective factual claims that are nowhere supported in the record, that they never sought discovery on, and never asked the district court to make findings on; and then ask the appeals court to resolve the putative factual dispute. *That* is forfeited. A party may not wait until appeal to challenge factual disputes about jurisdiction. For example, if a complaint or removal alleges diversity jurisdiction, a party may not delay proceedings on appeal by making speculative factual contentions that it forfeited below. *E.g.*, *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000). Plaintiffs had the opportunity to challenge Frank's proof of class membership. There is no record evidence that Frank "manufactured" standing.

And he didn'tFrank's non-aerosol purchase timing makes perfect sense: he stopped buying J&J aerosol sunscreen because J&J had *taken the aerosol products off the market* shortly before his planned trip, and instead substituted a different Neutrogena-branded product. 2 J.A. 36

at ¶ 6. (If this Court wishes, Frank would be happy to belt-and-suspenders the question by submitting a 28 U.S.C. § 1653 declaration that he knew nothing about a lawsuit over Neutrogena lotion when he made a sunscreen purchase for a hiking trip to South Dakota in the summer of 2021. Plaintiffs' implicit assumption of Frank's omniscience of the complete dockets in 94 U.S. District Courts is flattering, but incorrect.) If the settling parties wanted to exclude post-announcement buyers from the settlement class definition, they could have done so. But that still would not have prevented Frank from being bound by the settlement because there is no dispute he also bought aerosol sunscreen products during the class period *before* the recall. 2 J.A. 36 at ¶ 5.

In sum, Frank is twice over a class member under the settlement because he purchased both aerosol *and* non-aerosol J&J sunscreen products during the class period. Plaintiffs do not challenge his standing as an aerosol purchaser. Moreover, under binding law, he is bound by the settlement, which releases his claims for relief, so he has standing to challenge the settlement approval on appeal. "As a member of the [] class, [Frank] has an interest in the settlement that creates a 'case or controversy' sufficient to satisfy the constitutional requirements of injury, causation, and redressability." *Devlin v. Scardelletti*, 536 U.S. 1, 6-7 (2002). "Once he established that he was a member of the class, he needed to do no more in order to proceed with his objection." *Berni v. Barilla S.P.A.*, 964 F.3d 141, 145-146 (2d Cir. 2020). "For the same

reason, he need do no more now to proceed with his appeal before this Court." *Id.*[6]

## VII. Plaintiffs' cross-appeal lacks merit; the district court properly held that *Johnson* precludes class representative payments.

Plaintiffs have brought a single-issue cross-appeal arguing (PB39-42) that the district court erred in declining to award class representatives incentive awards for their participation in the case.

To the extent there is appellate jurisdiction over the cross-appeal, Plaintiffs would lose on the merits. This Court's holding was unambiguous in *Johnson*: "whether [an] incentive award constitutes a salary, a bounty, or both, we think it clear that Supreme Court precedent prohibits it." 975 F.3d at 1258-59. Until the Supreme Court or Congress sees fit to alter that conclusion, or the Eleventh Circuit decides *en banc* to rectify the circuit split where it currently stands alone, incentive awards are unavailable in this Circuit. *See id.* at 1260-61.

Plaintiffs acknowledge (PB39-40) the district court thought it was bound to deny the incentive awards but argue (PB40-42) for a non-

---

[6] Plaintiffs should be relieved that their argument is incorrect: the argument that some class members lack standing would by itself require this Court to vacate the underlying decision for Article III problems. *Cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) (no Article III jurisdiction to decide claims of class where over 6000 class members lack standing).

existent distinguishing principle: that *Johnson* does not apply to diversity cases. As discussed in the next paragraph, no such distinction exists. But as an initial matter, Plaintiffs forfeited the question by never asking the district court to resolve it, putting all their eggs in the basket of expecting *Johnson* to be overturned by the pending *en banc* petition.

*Johnson*'s repudiation of the legality of incentive awards was categorical and the decision nowhere confines its holding to cases arising under federal law. (Nor do plaintiffs cite any portion of the opinion even arguably doing so.)

Class representative incentive awards are a question of federal procedure and Rule 23; state law does not dictate federal procedure. *Shady Grove Orthopedic Assoc. v. Allstate Ins.*, 559 U.S. 393 (2010). The district court cases Plaintiffs cite (PB40-42) failed to properly consider *Shady Grove* and thus wrongly held *Johnson* does not apply in diversity jurisdiction cases. (Again: the combination of non-adversarial *ex parte* presentation and settling parties' lack of candor makes for poor district-court precedent in the Rule 23(e) arena.)

At such time if Plaintiffs make a motion under Rule 35 for *en banc* review, the Court should note that the parade of horribles predicted from the flood of *Johnson amici* has not come to pass. Parties bring plenty of class actions in the district courts of the Eleventh Circuit in the years since this Court decided *Johnson*, and there's no evidence that the

absence of incentive awards in this Circuit has changed the economics of class-action litigation, which is almost entirely attorney-driven.

## Conclusion

Plaintiffs have failed to demonstrate Article III standing to bring a complaint for injunctive relief; the district court failed to apply the correct standards of law for class-action settlement review; and the district court failed to provide a reasoned response to many of Frank's objections. The district court's final judgment granting settlement approval under Fed. R. Civ. P. 23(e) must be vacated.

The cross-appeal's request for class representative incentive awards would be mooted by a successful Frank appeal. Should the Court reach or opine on the merits, it should affirm on the collateral question in the cross-appeal.

Dated:  October 19, 2023           Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank
John M. Andren
HAMILTON LINCOLN LAW INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (703) 203-3848
Email:  ted.frank@hlli.org

Attorneys for Interested Party-
    Appellant/Cross-Appellee
    Appellant Theodore H. Frank

## Certificate of Compliance

This appellant's response-and-reply brief in a Rule 28.1 cross-appeal complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 28.1(e)(2)(A) because this brief contains 10,135 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4, as counted by Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Executed on October 19, 2023    */s/ Theodore H. Frank*
Theodore H. Frank